FIREMANS FUND INSURANCE COMPANY *v.* ROGERS.

1. Where in a particular instance the local agent of an insurance company had no authority except to forward to it for approval or rejection an application for insurance, and this was known to the applicant, a mere oral statement by the agent to the applicant that the insurance, if granted, would be operative from the date of the application, was not binding upon the company, the more especially when it was in the application stated that the insurance sought was desired from "the .... day of ....." in one year to "the .... day of ......." in another.
2. Though the company's general agent may, on the receipt by mail of such application, have approved the same, and may by letter have directed the issuance of a policy by the local agent, this constituted authority to issue one effective only from its date, and not one protecting the applicant's property from any prior point of time.   Accordingly, if the same had been actually destroyed by fire before the application was approved, and the general agent acted in ignorance of this fact, the company was not bound either to issue a policy or pay the loss.

Argued May 18, — Decided July 21, 1899.

Equitable petition.   Before Judge Sweat,   Ware superior court.   November term, 1898.

*Dessau, Bartlett & Ellis* and *Leon A. Wilson*, for plaintiff in error.   *William G. Brantley*, contra.

LUMPKIN, P, J.   An action was brought by Rogers against the Firemans Fund Insurance Company of San Francisco, the object of which was, (1) to compel the defendant to specifically perform an alleged contract to execute and deliver to him a policy of fire-insurance, and (2) to obtain thereon a judgment against the company for a loss incurred by reason. of the destruction by fire of a building and the stock of merchandise therein contained belonging to the plaintiff.   A demurrer filed

by the defendant to the plaintiff's petition was overruled, and the case proceeded to trial, resulting in a verdict in his favor. The material facts brought to light at the trial were as follows: Branham was an agent of the company, having an office in the city of Waycross; and, as to property situated therein, he had authority to issue policies of insurance. He had no such authority, however, as to property elsewhere located, but could only solicit applications for insurance and forward them to the company for approval or rejection. The plaintiff's property was not in the city of Waycross. On the 9th day of May, 1896, he made out and delivered to Branham an application for insurance. It, among other things, recited that he desired insurance upon the property therein described "for the term of one year from ..................... 189...... to ........................ 189......" This application was forwarded to one Wilson, the company's general agent at Macon, Ga. On the morning of the 10th of May, the property described in this application was burned. In the afternoon of that day, the general agent at Macon addressed to Branham, the local agent at Waycross, a letter which, for the purposes of this case, may be treated as an approval of Rogers's application and as authorizing Branham to issue to him the desired policy of insurance. At the time this letter was written, Wilson was ignorant of the fact that the fire had occurred. Rogers testified at the trial that Branham, at the time of receiving his application, assured him that if the same was approved and accepted by the company, the insurance would be effectual from the date of the application. After the fire Branham refused to issue and deliver a policy to Rogers, and the company declined to recognize any liability on its part for the loss. Without dealing specifically with the questions raised by the demurrer, we will undertake to dispose of the case as developed at the trial.

1. There was certainly no binding contract of insurance effected on the 9th day of May, for it unequivocally appears that Branham had no authority to make such a contract and that this was known to Rogers. In no event could there be a contract of insurance until Rogers's application was approved by the company's agent in Macon. This much seems mani-

fest. Though Branham may have stated to Rogers that the insurance, if granted, would be operative from the 9th of May, it is equally clear that the company would not be bound by any such statement. It was in no way informed that any attempt to bind it from that date had been made by its local agent, or that it was called upon to act on an application for insurance which, if accepted, would place it in the attitude of an insurer from the moment such application was delivered to its local agent. There is nothing even remotely suggesting that this agent or Rogers contemplated action by the company upon any such proposal. On the contrary, the application itself asked for insurance from "the........day of..................." in one year to the "........day of..............." in another, and the only reasonable and natural inference to be drawn from such an application would be that the insurance, if granted, should take effect from the date and delivery of the policy.

2. Treating Wilson's letter to Branham as an approval of Rogers's application, the legal effect of it was simply to authorize Branham to issue a policy thereafter protecting the property sought to be insured. Certainly, Wilson could not have intended to authorize the local agent to grant insurance antedating the letter itself. Indeed, it is perfectly obvious that Wilson really meant that Branham should, upon receipt of the letter, issue a policy taking effect from the date of its issuance. But even if the approval of Rogers's application of itself amounted to a contract of insurance, or to "a contract to insure," it only became effective, if at all, from the time Wilson's letter was written. At that time, the proposed subject-matter of the insurance was no longer in existence, and therefore there was nothing upon which such contract could operate. This being true, and Wilson being in ignorance of this vitally important fact, we have no difficulty in reaching the conclusion that the company was under no obligation either to issue a policy to Rogers or to pay him for the loss he sustained. Section 2095 of the Civil Code has no bearing on this case. It relates exclusively to completed contracts of insurance made between parties who were both ignorant that the loss against which it was intended to insure had already occurred.

　　　　*Judgment reversed. All the Justices concurring.*