## 32391. MADDOX *v.* LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE.

Decided April 22, 1949.

168

*George H. Carswell, Erwin Sibley,* for plaintiff.
*Martin, Snow & Grant,* for defendant.

FELTON, J. ■ The plaintiff in error contends that the court was without authority to require her to attach a copy of the application to the petition. Her contention is that the requirement was not made under penalty of having the action dismissed, but was an exercise of judicial power for disobedience to which she would have been subject to a citation for contempt of court. Assuming for the sake of argument that this contention is correct, the judgment of the court was not harmful to the plaintiff for the reason that the court properly required the attaching of the application insofar as such action was necessary in order for the

court to determine whether the plaintiff had a cause of action, and the question of contempt was eliminated by the submission to the order. The trial judge's order covers fully the reasons for his action and cites the authority for it, and it is needless for us to repeat the reasons or authority which are set forth in full in the statement of the case. If the judgment requiring the amendment was simply rendered under the implied penalty of a dismissal of the action, the ruling became the law of the case when the plaintiff acquiesced in the ruling, and it is immaterial that the judgment did not include an express provision for the dismissal of the action if the amendment was not filed. The case of *Luke* v. *Ellis,* 201 *Ga.* 482 (40 S. E. 2d, 85), is not authority to the contrary, because there the judgment requiring an amendment was not acquiesced in. See *Barley* v. *Horton,* 149 *Ga.* 605 (101 S. E. 680) ; *Farrer* v. *Edwards,* 144 *Ga.* 553 (87 S. E. 777) ; *Wade* v. *Drinkard,* 76 *Ga. App.* 159 (45 S. E. 2d, 231) ; *Jenkins* v. *Atlanta Police Relief Assn.,* 54 *Ga. App.* 209 (187 S. E. 597). This principle is so well settled that it seems to us that a certification of the question to the Supreme Court would be needless and futile. The request to certify the question is denied.

■ Counsel for the plaintiff in error insists that the action is upon the so-called "binder receipt" alone. The ruling of the trial judge shown above completely answers this contention. It is only necessary to call attention again to the facts that in the receipt the plaintiff is not named as beneficiary, nor is any amount of insurance provided for. If there was a cause of action on the receipt, it was not in the plaintiff. It is plain that the plaintiff had no cause of action without consideration of the application, and that examination of the application was necessary to determine whether she had one or not.

■ The trial court rendered a most thorough and exhaustive opinion, which we shall take the liberty of adopting and setting forth in full, and merely make a few comments in addition thereto.

"The instant suit is based on an application made by Jack F. Maddox to Life & Casualty Insurance Company of Tennessee, dated May 20, 1947, for a policy of life insurance in the sum of

$5,000, in which Mary C. Maddox, applicant's wife, is designated as beneficiary, and upon a conditional receipt issued to the applicant by an agent of the company, dated May 19, 1947. It further appears that the applicant died on May 22, 1947. The defendant demurred generally to the petition, as amended, and the issues made by the several counts of the petition may be generally stated as: (1) Was the application approved by the company, or was further approval necessary? (2) The effect of the limitation on the agents' authority contained in the application. (3) Are the provisions of the application and the conditional receipt ambiguous? (4) Whether the payment of an advance premium made the insurance applied for immediately effective? (5) Whether statements by the company's agent that the insurance was immediately effective were binding on the company, notwithstanding the limitation of authority placed on the agent in the application? And (6) whether custom might serve to modify or change the terms of the application and conditional receipt?

"1. Approval of application by Company. 'Insurance is a matter of contract.' *North British & Mercantile Ins. Co.* v. *Tye,* 1 *Ga. App.* 380 (58 S. E. 110). 'Insurance is business.' *Mobile Fire Dept. Ins. Co.* v. *Coleman,* 58 *Ga.* 251, 256. 'A contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made. . . So long as the application is not acted upon by the insurance company, of course no contract has been consummated; and if the applicant should die before the acceptance of his application, the company has incurred no liability.' *New York Life Ins. Co.* v. *Babcock,* 104 *Ga.* 67 (1), 70 (30 S. E. 273). 'In this case the application amounted only to an offer, and the company was free either to accept or reject it entirely.' *Boswell* v. *Gulf Life Ins. Co.,* 197 *Ga.* 269, 272 (29 S. E. 2d, 71). Compare also McCully's Adm'r *v.* Phoenix Mutual Life Ins. Co., 18 W. Va. 782.

"In *Hill* v. *Life & Casualty Ins. Co.,* 51 *Ga. App.* 578 (1) (181 S. E. 104), it was held: 'Where, in consideration of a payment to an insurance company of a certain stipulated amount of money as a premium for life insurance, the company agreed that upon

the approval at the home office of the application for the issuance of the policy, the company will, in the event of the death of the person insured prior to the issuance of the policy, pay to the beneficiary the amount of the insurance which would have been due had the policy been issued, there arises no contract of insurance in the absence of an approval of the application at the home office.' See also *Fowler* v. *Preferred Accident Ins. Co.*, 100 *Ga.* 330 (28 S. E. 398); *Fireman's Fund Ins. Co.* v. *Rogers,* 108 *Ga.* 191 (1) (33 S. E. 954); *Newton* v. *Gulf Life Ins. Co.*, 55 *Ga. App.* 330, 331 (190 S. E. 69); *Home Ins. Co. of New York* v. *Huguley,* 42 *Ga. App.* 598 (157 S. E. 391); *Smith* v. *Metropolitan Life Ins. Co.*, 76 *Ga. App.* 229 (45 S. E. 2d, 471). The rule applied by the Georgia courts appears in accord with that applied in other jurisdictions. Compare 29 Am. Jur. 160, § 144; Appleman on Insurance Law & Practice, Vol. 12, p. 315, § 7223; Reynolds *v.* Northwestern Mutual Life Ins. Co., 189 Iowa 76 (176 N. W. 207, 81 A. L. R. 332); Northwestern Mutual Life Ins. Co. *v.* Neafus, 145 Ky. 563 (140 S. W. 1026, 36 L. R. A. (N. S.), 1211); Kronjaeger *v.* Travelers Ins. Co., 124 W. Va. 730 (22 S. E. 2d, 689 (2)); Himes *v.* Metropolitan Life Ins. Co., 207 S. E. 420 (supra); Hyder *v.* Metropolitan Life Ins. Co., 183 S. C. 98 (190 S. E. 239); Cheek *v.* Pilot Life Ins. Co., 215 N. C. 36 (1 S. E. 2d, 115); Keller *v.* Provident Life & Accident Insurance Co. (S. C.), 49 S. E. 2d, 577 (2-4).

"Nor do the application and conditional receipt constitute a temporary policy. The distinction is pointed out in *Fort Valley Coca-Cola Bottling Co.* v. *Lumbermen's Mutual Casualty Company,* 69 *Ga. App.* 120 (24 S. E. 2d, 846), where it is said: '1. An application for insurance is a mere offer. 2. A 'binder' for insurance is very different, in that it is not a mere offer, but is in itself a contract in praesenti . . temporary, sketchy, and informal, but a contract notwithstanding.'

"In Mutual Life Ins. Co. of New York *v.* Young, 90 U. S. 85 (23 L. ed. 152), where the receipt under consideration was somewhat similar to the one declared on in the present case, Mr. Justice Swayne, speaking for the court, said: 'The receipt of the 5th of June was the initial step of the parties. It réserved the absolute right to the Company to accept or reject the proposi-

172

tion- which it contained. .- . The applicant assented to the proposition- contained in the receipt, but the Company did not. . . The mutual assent, the meeting of the minds of both parties, is wanting. Such assent is vital to the existence of a contract. · ·Without it there is none, and there can be none. . . The requisite assent must be the work of the parties themselves. The law cannot supply it for them. That is a function wholly beyond the sphere of judicial authority. As the applicant was never bound, the company was never bound. The policy was, therefore, no more a contract than the receipt. Both had the same. fatal defect, the want of the assent of one of the parties. . . The law involved is expressed by the phrase, "it takes two to make a bargain." ' The Georgia rule is the same. 'Before the alleged contract would be binding, the offer must be accepted "unequivocally and without variance of any sort." ' *Gray* v. *Lynn,* 139 *Ga.* 294, 296 (77 S. E. 156), quoting *Robinson* v. *Weller*, 81 *Ga.* 704 (8 S. E. 447).

"As in *Smith* v. *Metropolitan Life Ins. Co.*, 76 *Ga. App.* 229, 230 (supra), where the court said: 'The whole contention of the plaintiff seems to be that the so-called contract of temporary insurance is ambiguous and is capable of being construed in more than one way, and should be construed in a manner most favorable to the insured and so as to uphold and sustain the receipt as a contract of temporary insurance'—similar contentions are pressed in the instant case. In the *Smith* case the court also observed: 'We recognize the rule that, if a policy of insurance is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured. See *Mass. Benefit Life Assn.* v. *Robinson*, 104 *Ga.* 256 (2) (30 S. E. 918). After carefully considering all of the provisions of·the receipt we have concluded that it is not ambiguous and that it can not be construed as a contract of insurance under the facts alleged. The receipt speaks for itself and needs little explanation.' While it is true that in the *Hill* and *Smith* cases, supra,·the receipt required approval 'at the home office of the company;'·the application and receipt now under consideration are not rendered ambiguous because they do not contain such a statement. Clearly, under both the application and the conditional

receipt, the company must be satisfied of the insurability of the applicant and that applicant was a risk acceptable to the company under its rules. It will be observed that the application commences with the following statement: 'Application to the Life & Casualty Insurance Co. of Tennessee, Home Office, Nashville, Tennessee.'

"2. Right of Company to limit agent's authority by provisions in application. 'It was within the power of the insurance company, as between itself and its agent, to define and limit the powers of the latter. Limitations upon the power of an agent affect all third persons dealing with him, who have knowledge or notice thereof; and any notice of limitations upon the agent's power, which a prudent man is bound to regard, is the equivalent of knowledge to the insured.' *Reliance Life Ins. Co.* v. *Hightower*, 148 *Ga.* 843, 845 (98 S. E. 469). 'The stipulation in the signed application limiting the powers of agents, medical examiners and other persons, coupled with other words in the policy, were sufficient to charge the applicant with notice that she was dealing with a special agent with limited powers.' *Davis* v. *Metropolitan Life Ins. Co.*, 161 *Ga.* 568 (2) (131 S. E. 490). See also *Hutson* v. *Prudential Ins. Co.*, 122 *Ga.* 847 (50 S. E. 1000); *New York Like Ins. Co.* v. *Patten*, 151 *Ga.* 185 (106 S. E. 183); *Bank of Commerce* v. *New York Life Ins. Co.*, 125 *Ga.* 552 (3) (54 S. E. 643); *Great Eastern Casualty Co. of New York* v. *Reed*, 17 *Ga. App.* 613 (1) (87 S. E. 904); *Puckett* v. *Metropolitan Life Ins. Co.*, 32 *Ga. App.* 263 (122 S. E. 791).

"3. Ambiguity. 'A contract may be so clear as not to require interpretation, but a mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity within the rule as to the admission of parol evidence to explain its meaning. Nor is a contract ambiguous within that sense merely because it may be even difficult to construe. The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred, unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true in-

174

tention of the parties. Code §§ 20-701, 20-702.' *McCann* v. *Glynn Lumber Co.*, 199 *Ga.* 669, 679 (34 S. E. 2d, 839).

"Rule of construction and duty of court to construe. 'Courts are not called upon, because of the rule that contracts of insurance are to be strictly construed against the insurer and because the contract itself is one of insurance, to call forth doubt, through construction of plain and unambiguous provisions of such a contract. They should not make hypercritical construction of such contracts. "The language of the contract should be construed in its entirety, and should receive a reasonable construction and not be extended beyond what is fairly within its terms." ' *New York Life Ins. Co.* v. *Thompson*, 45 *Ga. App.* 638 (165 S. E. 847); *Ætna Life Ins. Co.* v. *Padget*, 49 *Ga. App.* 666, 669 (176 S. E. 702). 'Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense.' Bergholm v. Peoria Life Ins. Co., 284 U. S. 489 (52 Sup. Ct. 230, 76 L. ed. 416). See also *North British Ins. Co.* v. *Tye*, 1 *Ga. App.* 380, 389 (supra). 'The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover.' Hawkeye Commercial Men's Assn. v. Christy, 294 Fed. 208, 213. 'Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made.' *Cato* v. *Aetna Life Ins. Co.*, 164 *Ga.* 392, 398 (138 S. E. 787), cited in *Quillian* v. *Equitable Life Assurance Society*, 61 *Ga. App.* 138, 142 (6 S. E. 2d, 108).

"A reasonable construction of the application and conditional receipt is that the company, by an officer of the company, as distinguished from an agent or employee, must determine the insurability of the applicant, and whether or not he was a risk acceptable to the company under its rules. As was held in *Vardeman* v. *Penn. Mut. Life Ins. Co.*, 125 *Ga.* 117, 119 (54 S. E. 66): 'Officers, as such, are the corporation.' Thus approval by the company or officers of the company means one and the same thing. In the instant case, the fact that no specific officer·

of the company is named to approve the application, or that approval at the home office is not required, is without significance. In the *Vardeman* case, supra, the contract of insurance contained the following provisions: 'No alteration of this contract or waiver of any of its conditions shall be valid unless made in writing and signed by an officer of the company.' In the instant case, whether the authority of May, the soliciting agent, or Hatcher, the home office inspector, be relied upon, the result is the same. Neither was clothed with authority to determine insurability. As was further said in the *Vardeman* case, supra, at page 119: 'In the present case the person authorized to make the waiver is designated by the general term "officer," and the question is whether a general agent is an officer. . . One distinction between officers and agents of a corporation lies in the manner of their creation. An office is created by the charter of the corporation and the officer is elected by the directors or stockholders. An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority. It is clear that the two terms, officers and agents, are by no means interchangeable. One, deriving its existence from the other, and being dependent upon that other for its continuation, is necessarily restricted in its powers and duties, and such powers and duties are not necessarily the same as those pertaining to the authority creating it. The officers, as such, are the corporation. An agent is an employee. "A mere employment, however liberally compensated, does not rise to the dignity of an office." 21 Am. & Eng. Encl. L. (2d. ed.) 836.' See also *Great Eastern Casualty Co. of New York v. Reed,* 17 *Ga. App.* 613 (87 S. E. 904).

"The report of the home office inspector (Application, Part F) does not purport to be an acceptance of the application for insurance. There is no contention in the several counts of the petition that the home office inspector is an officer of the company.

The district office report (Application, Part E), signed by a clerk, after the death of the applicant, could, in no event, be construed as an acceptance by the company.

"4. Acceptance of premium in advance. 'Where pending

mere negotiations for a policy of insurance, the person on whose life it might or might not have been written dies, the company is not liable on the proposed policy simply because it accepted premiums in advance on the supposition that the policy would be issued.' *McGlothin* v. *United States National Life & Casualty Co.*, 36 *Ga. App.* 325 (3) (136 S. E. 535), and cit; *John Hancock Mutual Life Ins. Co.* v. *Ludwick*, 45 *Ga. App.* 631 (3) (165 S. E. 918).

"5. Statement by agent contrary to provisions of application and receipt. 'While we recognize the rule that a policy of insurance must be construed most strongly against the insurer, still the words of the policy must be given the meaning which they ordinarily bear; and where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import. . . The writing being unambiguous, parol evidence as to what was said by the parties at the time it was executed will not be admitted to vary or alter the terms of the writing. The petition set forth no cause of action, and was properly dismissed on demurrer.' *Wheeler* v. *Fidelity & Casualty Co. of New York*, 129 *Ga.* 237, 240 (58 S. E. 709), cited in *Mitchiner* v. *Union Central Life Ins. Co.*, 185 *Ga.* 194, 195 (194 S. E. 530). Nor would the 'verbal assurance by the agent to the applicant that he is insured from the date of the application, and the giving of the receipt, constitute a contract of insurance upon which an action can be maintained.' *Fowler* v. *Preferred Accident Ins. Co.*, 100 *Ga.* 330 (2) (28 S. E. 398); *Fowler* v. *Liberty National Life Ins. Co.*, 73 *Ga. App.* 765, 770 (4) (38 S. E. 2d, 60); *Newton* v. *Gulf Life Ins. Co.*, 55 *Ga. App.* 330, 331 (190 S. E. 69).

"6. Custom in insurance cases. 'When parties make an express contract which is plain, evidence of usage and custom is inadmissible to control, vary or contradict it.' Custom or usage can not be 'repugnant to, or inconsistent with, the contract.' *Park & Iverson* v. *Piedmont &c. Ins. Co.*, 48 *Ga.* 601. See also *Merchants Nat. Bank of Savannah* v. *Demere*, 92 *Ga.* 735 (19 S. E. 38); *Emery* v. *Atlanta Real Estate Exchange*, 88 *Ga.* 321 (14 S. E. 556); *Haupt* v. *Phoenix Mutual Ins. Co.*, 110 *Ga.*

146, 149 (35 S. E. 342); *Vardeman* v. *Penn Mutual Life Ins. Co.*, 125 Ga. 117, 120 (supra).

"7. Accordingly, applying the principles above stated, it is ordered that the defendant's general demurrer, renewed to the petition as amended, be, and the same is sustained, and the petition is dismised, at plaintiff's costs."

 It might be well for us to state one or two more reasons why the trial court's judgment was correct. The plaintiff in error insists that rules of the insurance company not shown in the application and receipt are not binding on the insured. The rules referred to in Code § 56-904 are rules which form a part of the contract of insurance. This principle of law does not apply to the rules by which the insurance company determines the insurability of an applicant and the desirability of the risk.

█ The plaintiff in error contends that "completion of Part B" of the application means completion by the soliciting agent and home office inspector. Aside from the general practice that such agents do not and cannot issue contracts of insurance, the application shows that the soliciting agent makes a report to someone of his opinion as to whether a policy should be issued. The same is true of the home office inspector. Question 12 in the application signed by the soliciting agent is: "If question 10 shows any policies lapsed, would you, in view of the applicant's lapse record, advise the issuance of this policy?" Question 7, signed by the home office inspector is: "Do you recommend issuance of policy?" Answer: "Yes." These questions alone show that the application must go higher up for approval and the application so specifically states. The fact that no medical examination was required does not mean that the soliciting agent or the home office inspector could bind the company by a final contract of insurance. The officials still have the right to investigate the condition of the applicant's health, his character, and his desirability as an insurance risk. The completion of section or part B of the application means the final decision on the part of the officers of the company to issue a policy, after it has made whatever investigation it sees fit to make. The application and receipt provide that insurance is to become

█

178

effective *after* such a completion of part B of the application—not from the date of the application. If the plaintiff in error's contention is correct, the company might as well turn their non-medical examination policies over to the soliciting agents and home office inspectors and permit them to issue policies directly.

The court did not err in sustaining the general demurrer to each count and in dismissing the action.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*