Katherine A. McCULLERS,
Plaintiff-Appellant,

v.

AUTO–OWNERS LIFE INSURANCE
COMPANY, Defendant-Appellee.

No. 84–8918.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1985.

Jesse W. Walters, H.H. Perry, Jr., Albany, Ga., for plaintiff-appellant.

Edward L. Savell, Atlanta, Ga., for defendant-appellee.

Before RONEY and FAY, Circuit Judges, and DUMBAULD *, District Judge.

PER CURIAM:

This appeal arose as a result of a jury verdict in favor of the defendant Auto-Owners Insurance Company ("Auto-Owners") and against the plaintiff, who was the beneficiary of her husband's application for a life insurance policy with appellee. Appellant challenges certain jury instructions [1] which limited the scope of the jury's

---

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. THE COURT: Members of the jury, just to clear up any misunderstanding there might've been—which I don't know that there has been any, but if there has been I want to clear it up. I told you during the course of my charge and I tell you again now that the fundamental question to be determined by you in arriving at your verdict is this.

I charge you that if you find from the evidence which has been introduced during the course of this trial that Mr. McCullers, the plaintiff's now deceased husband, was in good health and an acceptable insurance risk for the insurance applied for at the defendant's standard insurance rates, in accordance with whatever rules and practices of the defendant may have

been developed by the evidence in this case, and you further find that an authorized underwriting officer of the defendant insurance company, considering the evidence and acting objectively and in good faith, would have reasonably so concluded prior to the death of Mr. McCullers, then you would be authorized to return a verdict in favor of the plaintiff for the amount sued for.

I'll repeat that again since there seems to have been some misunderstanding by counsel about it. I want to be sure there's been no misunderstanding by you about it. So I'll repeat that. If you find from the evidence in this case that Mr. McCullers, the plaintiff's husband, was in good health and an acceptable insurance risk for the insurance applied for at the defendant's standard insurance rates, in accordance with whatever rules and practices of the defendant may have been shown by the evidence, and you fur-

inquiry to facts which were known to appellee prior to the applicant's death. We affirm the judgment, because we conclude that the trial judge could have directed a verdict in favor of appellee on the ground that the policy was not in effect at the time of applicant's death.

## I. FACTUAL BACKGROUND

This action was brought by Katherine A. McCullers, the surviving wife of Marvin McCullers. Mr. McCullers applied to appellee for a life insurance policy in the amount of $100,000 on November 18, 1981, with accidental death benefits for an additional $100,000. Appellant was designated as the beneficiary. Mr. McCullers paid the initial premium on November 18 and was issued a "Conditional Receipt." The pertinent provisions of the Conditional Receipt provided:

> The insurance under the policy and/or additional benefits for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if required by the company) whichever is the latter date, if in the opinion of the authorized officer of the company at its home office the proposed insured is acceptable for insurance under the rules and practices, on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application ...
>
> In the event a proposed insured dies as a result of accidental injury which occurred after the issuance of this receipt, insurance will be deemed to be in force on the date of death provided it has not been terminated in accordance with the termination provisions of this receipt. Even if insurance is provided, the maximum liability of the company under this receipt shall be $50,000 less the amount payable under all conditional receipts for life insurance in effect at the time of death with this company.

The application was received by Auto-Owners on November 23, 1981. Upon receipt of the application, Jacqueline Newman ("Newman"), who processed the application, ordered a report from Medical Information Bureau ("MIB"). MIB is a nonprofit organization which gathers from member insurance companies information relating to applicants. Such information is coded and can not be used as the basis of a final underwriting decision until it has been corroborated by another source. The MIB report requested by Newman was received on November 24 and indicated that Mr. McCullers had previously applied for insurance with another company in 1977. The MIB report also indicated that the insurance company had an x-ray which showed emphysema. This x-ray was not produced at trial.

On December 4, 1981, Mr. McCullers had a medical examination, as required by Auto-Owners. Dr. Ashby Woods conducted the examination, and indicated on his report that he recommended Mr. McCullers "as a desirable risk for life insurance." No x-ray of Mr. McCullers was taken at that time. On cross-examination, a vice-president of Auto-Owners, who is in charge of the underwriting department, testified that there was nothing in Dr. Woods' medical report that would have deterred the company from issuing a life insurance policy.

On January 4, 1982, Newman requested more information from MIB and sent a memorandum to George Daniels, Auto-Insurers' agent, requesting a recent x-ray from Mr. McCullers. On January 6, Mr. McCullers died accidentally in a boating accident. Agent Daniels received the request for an additional x-ray on January 8, two days after Mr. McCullers' death.

There was evidence presented at the trial that Mr. McCullers had applied for insurance on October 29, 1981 with Liberty National Life Insurance Company. Mr. McCullers had an x-ray taken in early No-

---

ther find that an authorized underwriting officer of the defendant, considering the evidence available to that underwriting officer and acting objectively and in good faith, would reasonably so conclude at that time prior to Mr. McCullers'

death, then you would be authorized to find for the plaintiff in this case. Otherwise, you would not be authorized to find for the plaintiff in the case.

vember of 1981, which was interpreted as "normal for age, normal chest for age." There was no indication on Mr. McCullers' application with Auto-Insurers that he had previously applied for life insurance with any other insurance companies. At the time of Mr. McCullers' death, therefore, Auto-Insurers was unaware that this recent x-ray existed.

## II. THE LAW

■ The Georgia law on conditional receipts and when a policy is deemed effective dictates the result in the instant case. Under Georgia law, an application for insurance does not create a binding contract of insurance until the insurer manifests its acceptance. *Atkinskon v. American Agency Life Insurance Co.*, 165 Ga.App. 102, 103, 299 S.E.2d 600, 601 (1983). The Georgia cases emphasize that no coverage exists until there has been an unconditional acceptance of the application by the insurance company. *See, e.g., Guest v. Kennesaw Life & Accident Insurance Co.*, 97 Ga.App. 840, 844, 104 S.E.2d 633, 637 (1958); *Maddox v. Life & Casualty Insurance Co.*, 79 Ga.App. 164, 168, 53 S.E.2d 235, 239 (1949).

Appellant contends that the policy should be deemed effective as of the date her husband completed his medical examination. This contention, however, ignores the second part of the paragraph in the conditional receipt, which expresses the necessary unconditional acceptance by the home office before a policy is deemed effective. The conditional receipt provides that the insurance policy shall be deemed effective on the date of completion of the medical examination.

> *if* in the opinion of the authorized officer of the company *at its home office* the proposed insured is acceptable for insurance under the rules and practices, on the plan of insurance....

The Georgia Supreme Court in *Woodmen of World Life Insurance Society v. Etheridge*, 223 Ga. 231, 154 S.E.2d 369 (1967), faced a similar problem to the one at bar. The application in *Etheridge* contained language similar to that of the instant application. The application in that case provided that:

> [T]he [insurer] agrees that the benefits applied for shall be in effect from the date of the application, *if the applicant is insurable* for the amount *and plan applied for as a standard risk under the rules and practices of* [the insurer].

*Id.* at 233, 154 S.E.2d at 371 (emphasis added).

The *Etheridge* court held that coverage was conditioned upon a determination by the insurance company that the applicant was insurable as a standard risk. *Id.* at 233, 154 S.E.2d at 371. That is, the determination of insurability was a condition precedent to a determination that coverage existed. *Id.*, 154 S.E.2d at 371.

The applicant in *Etheridge* had paid his first premium and received a conditional receipt. His application, however, had not been approved by the Medical Director of the insurance company, as required under the terms of the conditional receipt. The Georgia Supreme Court expressly held that "[t]he effective date of the insurance is when these conditions [approval by the home office] have been met." *Id.* at 236, 154 S.E.2d at 372. It is clear that in the instant case, no insurability determination had been made, as evidenced by the memo sent by Ms. Newman requesting an additional x-ray. The fact that Dr. Woods had given Mr. McCullers a clean bill of health is largely irrelevant, as the insurance company had clearly reserved the right, in its conditional receipt, to make the final approval on the applicant. Moreover, Ms. Newman testified that she could not have approved an application for insurance based on the information she had from the MIB report, without a current x-ray, which had been interpreted and approved by Auto-Owner's Medical Director.

In *Maddox*, 79 Ga.App. 164, 53 S.E.2d 235,[2] the Georgia Court of Appeals interpreted a receipt which stated:

**2.** In *Etheridge v. Woodmen of World Life Insur-*  *ance Society*, 114 Ga.App. 807, 152 S.E.2d 773

If [the sum paid by the applicant] is equal to the full first premium on the policy applied for then if the Company shall be satisfied that at the time of the completion of the medical examination or Part B of the application, if no medical examination is required, that the risk was acceptable to the company under its rules, ... then the insurance applied for shall be in force as of the date of the completion of the medical examination, or of Part B of the application....

*Id.* at 165, 53 S.E.2d at 237. Like the receipt in the instant case, the receipt in *Maddox* permitted the effective date of the policy to apply retroactively to the time the medical examination was completed, provided that the insurer was deemed an insurable risk by the home office. The applicant in *Maddox,* like Mr. McCullers here, had died a couple of days after completing the application but before a policy was issued. The Georgia Court of Appeals affirmed the trial court's decision that "under both the application and the conditional receipt, the company must be satisfied of the insurability of the applicant and that applicant was a risk acceptable to the company under its rules." *Id.* at 172–73, 53 S.E.2d at 241. The court sustained the dismissal of plaintiff's petition on the ground that the insurer had not rendered a final decision on the insurability of the applicant: hence, there was no binding policy in effect at the time of the applicant's death.

*Kammerer v. Metropolitan Life Insurance Co.,* 95 Ga.App. 609, 98 S.E.2d 391 (1957), is also instructive. As in the instant case, the applicant in *Kammerer* had died between the time that he had applied for insurance and made the first premium payment and issuance of the policy. At trial, the insurance company showed that no policy had been issued, pending the receipt of medical and credit reports. The receipt issued to the applicant upon payment of the first premium provided that:

If the sum collected at the time the application is signed is equal to the full premium on the policy applied for and if such application is approved at the company's home office within 30 days thereafter for the class, form, and amount of insurance therein applied for, then the insurance applied for shall be in force from the date of the application.

*Id.* at 610, 98 S.E.2d at 392.

The Georgia Court of Appeals held that the insurer was not obligated on the receipt because the application had not been acted upon and approved at the time of the applicant's death. As the court stated:

The uncontradicted evidence in this case being, that, while the application was being processed, and before approval or rejection, the applicant died and the company thereafter refused to approve the policy, the plaintiff failed to carry the burden of proving that the application had been "approved at the company's home office within 30 days" as required by the terms of the binder in cases where the full premium is paid in.

*Id.* at 611–12, 98 S.E.2d at 393. Similarly, we believe that appellant has failed to prove that appellee had made the necessary

(1966), the Georgia Court of Appeals expressly overruled *Maddox,* 79 Ga.App. 164, 53 S.E.2d 235 (1949), *Kammerer v. Metropolitan Life Insurance Co.,* 95 Ga.App. 609, 98 S.E.2d 391 (1957), and other cases, on the ground that the condition found in the Conditional Receipt that the applicant be an insurable risk was a condition subsequent. According to the Court of Appeals, the only way the insurance company could escape liability was by "show[ing] that at the time the conditional coverage commenced the applicant was in fact not an insurable risk by any reasonable standard in relation to the coverage applied for." *Etheridge,* 114 Ga.App. at 808–09, 152 S.E.2d at 775. The Georgia Supreme Court rejected this reasoning and re-

versed this ruling in *Etheridge,* 223 Ga. 231, 154 S.E.2d 369. The Supreme Court construed the conditional receipt to mean that coverage was "conditional upon ... completion of the application, *and the applicant is found to be insurable as a standard risk." Id.* at 234, 154 S.E.2d at 371 (emphasis added). *Maddox,* 79 Ga.App. 164, 53 S.E.2d 235, has recently been cited with approval by the Georgia Court of Appeals. *See Atkinson,* 165 Ga.App. 102, 299 S.E.2d 600 (1983). We believe, therefore, that the cases overruled in the Court of Appeals' decision in *Etheridge,* 114 Ga.App. 807, 152 S.E.2d 773, were resurrected by the Georgia Supreme Court, when it reversed the Court of Appeals in *Etheridge,* 223 Ga. 231, 154 S.E.2d 369.

determination, under the terms of the Conditional Receipt, that appellant was acceptable for insurance under the rules and practices of its home office.

▉ We conclude that, as a matter of law, the insurance policy was not in effect at the time of Mr. McCullers' death, because appellee had not manifested its acceptance of the policy. Under Georgia law, a "Conditional Receipt" is simply that: conditional. Coverage is conditional upon the approval of the risk by the home office. Until approval is given, though the insurance company may provide interim protection,[3] full coverage under the policy does not exist.

It is unnecessary for us to address the question whether the jury instructions were correct. There are no Georgia cases which discuss this precise question as to what time frame the jury may consider when determining the reasonableness of the insurance company's decision regarding insurability. We will not venture to guess what Georgia courts would say on this issue; rather, we rest our decision on the ground that a decision on insurability had not been made at the time of the applicant's death, and, under Georgia law, no policy of insurance had come into existence.

The judgment is AFFIRMED.

DUMBAULD, District Judge, concurring:

It is clear that under the terms of the conditional receipt issued by the insurance company in the case at bar the coverage becomes effective upon completion of the medical examination only *"if in the opinion of the authorized officer* of the company at its home office *the proposed insured is acceptable"* under company standards.

This creates an awkward situation if the proposed insured dies before the officer at the home office has had an opportunity to make the requisite determination as to acceptability.

It would be difficult for the officer to find that the applicant "is acceptable" if he is already dead. The temptation *is* obvious for the officer to determine that the applicant is unacceptable, or simply to make no determination at all.

It may be that fairness would require that the officer, disregarding hindsight, must promulgate a bona fide determination as to *what his determination would have been at the time of completion of the physical examination* if he had had the opportunity to act upon the matter at that time.

Establishment of such a rule, however, is a matter for consideration by the legislature. The courts must give effect to the wording of the conditional receipt as it is written. Proper interpretation of its terms shows that the coverage never became effective. The judgment of the District Court in favor of the insurance company must be affirmed.

---

**3.** It is important to note that Auto-Owners promptly paid appellant the $50,000, which constituted interim protection, as provided in the Conditional Receipt.