## NETWORK AMERICA LIFE INSURANCE COMPANY, Plaintiff,

v.

## M.J. TAYLOR, et al., Defendants.

Civ. A. No. 92–155–VAL (WDO).

United States District Court,
M.D. of Georgia,
Valdosta Division.

Nov. 17, 1993.

George T. Talley, Valdosta, GA, for plaintiff.

Howard Eugene McClain, Adel, GA, for M.J. Taylor.

Jim Tunison, James Gostin Tunison, Jr., Valdosta, GA, for E. Fred Siska and Siska's Agency, Inc.

### *ORDER*

OWENS, Chief Judge.

Before the court is plaintiff's motion for summary judgment. After careful consideration of the arguments of counsel, the rele-

vant case law, and the record as a whole, the court issues the following order.

### FACTS

On August 15, 1990, defendant M.J. Taylor filled out an application for a three-year "nursing home" insurance policy with plaintiff Network America Life Insurance Company. Subsequently, E. Fred Siska, an independent insurance agent, submitted this application to plaintiff. The application contained numerous misrepresentations regarding M.J. Taylor's past and present health condition.

On August 24, 1990, M.J. Taylor was declared legally incompetent by the Cook County Probate Court. The court appointed Bruce Taylor, M.J. Taylor's son, temporary guardian of M.J. Taylor.

Shortly after August 24, 1990, plaintiff issued a three-year "nursing home" insurance policy to M.J. Taylor with an effective date of August 27, 1990. Approximately a year later, on August 30, 1991, Bruce Taylor and his sister, Era Weeks, submitted a claim for benefits under the "nursing home" policy. In processing the claim, plaintiff discovered the misrepresentations concerning M.J. Taylor's health and rescinded the policy. Plaintiff then filed the present declaratory judgment action seeking a determination as to any possible liability it might hold under the rescinded policy.

### DISCUSSION

Plaintiff's motion for summary judgment presents two issues for the court:

(1) Did a valid "nursing home" insurance policy exist between plaintiff and defendant M.J. Taylor?

(2) Even if the policy was not valid, would plaintiff be estopped from denying its existence?

The court will address each issue in the following discussion.

I. DID A VALID "NURSING HOME" IN-SURANCE POLICY EXIST BE-TWEEN PLAINTIFF AND DEFEN-DANT M.J. TAYLOR?

Official Code of Georgia Annotated ("O.C.G.A.") § 13–3–24 provides:

After the fact that a person is ... mentally incompetent to the extent that he is incapable of managing his estate has been established by a court of competent jurisdiction in this state and the affairs of such person are vested in a guardian, the power of such person to contract ... shall be entirely gone; any contracts made by such person shall be absolutely void until the guardianship is dissolved....

O.C.G.A. § 13–3–24(b) (1982). Defendants contend that because M.J. Taylor filled out the application for insurance prior to being declared incompetent, O.C.G.A. § 13–3–24 is inapplicable and the insurance policy is therefore valid. Defendants' argument is without merit.

 In Georgia, an application for insurance, standing alone, does not create a contract between the insurance company and the applying party. *Robertson v. Life Insurance Co. of Georgia,* 196 Ga.App. 294, 294, 396 S.E.2d 35, 35 (1990). "[Until] the offer is accepted by the company no contract ... comes into existence...." *Robertson,* 196 Ga.App. at 294, 396 S.E.2d at 35; *see also McCullers v. Auto–Owners Life Insurance Co.,* 771 F.2d 1491, 1493 (11th Cir.1985) ("an application for insurance does not create a binding contract of insurance until the insurer manifests its acceptance"). In the case at hand, at the time plaintiff accepted defendant M.J. Taylor's application for insurance and created, ostensibly, a contract between plaintiff and defendant, defendant M.J. Taylor was incompetent as a matter of law to enter into any contractual arrangements. Accordingly, the contract between plaintiff and defendant M.J. Taylor was void ab initio.

II. EVEN IF THE POLICY WAS NOT VALID, WOULD PLAINTIFF BE ES-TOPPED FROM DENYING ITS EX-ISTENCE?

 Defendants contend that because an agent of plaintiff fraudulently misrepresented M.J. Taylor's health history to plaintiff, plaintiff is estopped to deny the existence of a contract for insurance between M.J. Taylor

and plaintiff.[1] *See Mills v. Lloyds, London,* 201 Ga.App. 666, 667, 411 S.E.2d 713, 714 (1991). However, when the contract is void ab initio, any misrepresentations that an agent of plaintiff may or may not have made to plaintiff are irrelevant. The concept of estoppel assumes that if an insurance company is estopped to deny the existence of a particular fact, that a valid contract would exist. That is not the situation in the case *sub judice.* As noted above, the insurance contract at issue was void ab initio. Estopping plaintiff to deny the existence of any fact regarding M.J. Taylor's health would not render Taylor competent to enter into a contractual obligation. Therefore, plaintiff is not estopped to deny the existence of a contract for insurance. Accordingly, plaintiff's motion for summary judgment is **GRANTED.**

### CONCLUSION

The court holds that the contract for insurance between plaintiff Network America Life Insurance Company and defendant M.J. Taylor was void ab initio. Further, the court holds that plaintiff is not estopped to deny the existence of the contract for insurance. Accordingly, plaintiff's motion for summary judgment is **GRANTED.**

**SO ORDERED.**

---

**1.** Defendant E. Fred Siska, however, maintains that M.J. Taylor was the fraudulent party and, therefore, summary judgment should be denied because a genuine issue of material fact remains as to this question. As will be discussed, however, this determination is unnecessary for a proper resolution of plaintiff's action.