## NEW *v.* SOUTHERN RAILWAY COMPANY.

1. A contract whereby a father hires his minor son to another, and releases him from all liability for " damages for any injuries sustained " by the son while in the employer's service, will, when such contract can, under the facts of a case arising thereunder, be properly treated as valid and binding, defeat a recovery by the father for the loss of the value of the son's services during minority, even where such loss is occasioned by the homicide of the minor.
2. Such a contract, though made with a railway company, is valid and binding to the extent of exempting the latter from liability for negligent acts of itself or servants, which are not criminal.

Submitted May 1,—Decided August 7, 1902.

Case. Before Judge Calhoun. City court of Atlanta. January 17, 1902.

*Arnold & Arnold*, for plaintiff.
*Dorsey, Brewster & Howell* and *Sanders McDaniel*, for defendant.

LUMPKIN, P. J. The Southern Railway Company employed as a switchman Looney Oscar New, the minor son of W. B. New. The latter entered into a written contract with the company, by which he, among other things, stipulated as follows: " I further hereby agree and consent that said company is by these presents

released and forever acquitted from all or any claim or liability to me for damages for any injuries sustained by said Looney Oscar New while in its employment; and also that said company may pay all wages and other moneys due or growing out of said employment direct to him, and receive acquittance therefor from him in his own name." The minor was killed while in the service of the company, and the father brought an action for the value of his services up to the time when he would have attained majority. After the plaintiff had closed, the defendant introduced in evidence the above-mentioned contract, and the court directed a verdict in its favor, on the ground that this contract "barred any right of the plaintiff to recover." To this W. B. New excepted. The case as here presented and argued turns upon the two questions dealt with in the discussion which follows.

1. It was insisted in behalf of the plaintiff in error that as the contract purported to relieve the company only from such damages as might arise from "injuries" sustained by the minor, it did not apply to damages resulting to the father from the son's death. While injury and death are by no means synonymous, it is certainly true that, relatively to a father seeking to recover for the lost services of his minor child, it is immaterial whether the tort from which his loss originated was one which occasioned the child physical injury destroying his ability to labor, or one which, by causing his death, brought about the same result. So far as the alleged right of W. B. New to have compensation from the company was concerned, the killing of his son by it was, to all practical intents and purposes, the same as the injuring of him by it; for the gist of his action was the loss of the son's services. See *Frazier* v. *Georgia Railroad Co.*, 101 *Ga.* 70. The company, in contracting with New for a release from damages for injuries sustained by the son, was manifestly seeking to free itself from damages which, but for the contract, the father might claim because of such injuries; and in this view it is without doubt proper to construe the term "injuries," used in the contract, as having been intended to apply to any and all kinds of bodily harm, whether resulting in partial or total disability of the minor or in his death.

2. The remaining and more important contention of counsel for the plaintiff in error is, that inasmuch as the contract, if enforced, will in effect relieve the company of liability for the consequences

of its own negligence, it is for this purpose, at least, void as being contrary to public policy. Our ruling on this branch of the case is expressed in the second headnote.

In the case of *W. & A. R. Co.* v. *Bishop*, 50 *Ga.* 465, this court held that a contract between a railroad company and its employee, exempting the former from damages resulting from its own negligence, was, save as to "any criminal neglect of the company, or its principal officers," valid. In that case the action was by an employee for personal injuries. The ruling therein made was followed and applied in *W. & A. R. Co.* v. *Strong*, 52 *Ga.* 461, which was an action by a widow for the homicide of her husband; and it was decided that, as the contract was binding upon him, her right of action was cut off. A similar case, that of *Hendricks* v. *W. & A. R. Co.*, appears in the same volume, page 467. The correctness of the rule laid down in *Bishop's* case was recognized in that of *Galloway* v. *W. & A. R. Co.*, 57 *Ga.* 512, which was also an action for personal injuries brought by an employee against the company. These cases were all decided before the passage of the act of February 15, 1876, "to define and punish criminal negligence," the provisions of which have been codified (Penal Code, § 115) as follows: "If any person employed in any capacity by any railroad company doing business in this State shall, in the course of such employment, be guilty of negligence, either by omission of duty or by any act of commission, in relation to the matters intrusted to him, or about which he is employed, from which negligence serious bodily injury, but not death, occurs to another, he shall be guilty of criminal negligence, and shall be punished by confinement in the penitentiary not less than one nor more than two years, in the discretion of the court."

In the case of *Cook* v. *W. & A. R. Co.*, 72 *Ga.* 48, which was an action by a widow for the homicide of her husband, this court, in a decision rendered by two Justices, held, in effect, that, after the passage of the above-mentioned act, any negligence on the part of a railroad company or of its servants, from which the death of an employee resulted, was necessarily "criminal negligence." It seems, however, that the two Justices by whom the case was decided entirely overlooked the fact that the act of 1876 expressly exempted from the operation of its provisions all cases in which deaths were caused. It is clear that the purpose of the General

Assembly in passing this act was to create a new class of criminal offenses which should embrace all acts of negligence on the part of railroad employees, whether of commission or of omission, from which serious bodily injury, "but not death," might result; and equally clear that there was no intention to change existing laws with respect to unlawful homicide or the punishment therefor. We are, therefore, satisfied that a grave error was committed in making the *Cook* case turn upon the act of 1876, which really had no bearing upon it. The court distinctly recognized the correctness of the settled rule that a railroad company could lawfully stipulate for exemption from liability to an employee for damages resulting from acts of negligence not criminal, but made a mistake in holding that the act of 1876 rendered any negligent act of a railroad employee, from which death resulted, per se felonious. Under a proper application of the rule just stated, the case should have been made to turn upon the question whether or not, under the law as it stood, without reference to the act of 1876, the negligence causing Cook's death was criminal and indictable. As this decision was not rendered by a full bench, it is not binding as authority ; and as it was manifestly based upon an erroneous view with respect to the true intent and meaning of the act of 1876, it will not be followed.

This court, in *Fulton Mills* v. *Wilson,* 89 *Ga.* 318, upon a review of the cases above mentioned, reaffirmed the rule, in so far as the same was not modified by the act of 1876 touching railroad employees, that "as between employer and employee, the latter in the contract of hiring may assume all risks appertaining to the service, save such as arise from criminal negligence." We have endeavored to show that the act referred to has no application at all to an action against a railroad company for a homicide, and that when, in defense to a suit, a contract like that relied on in the present case is set up by the company, its efficacy should be made to depend upon whether or not the act causing the death was criminal without regard to the provisions of section 115 of the Penal Code, which was, as above stated, codified from the act of 1876. The evidence in the present case did not, so far as this court is informed, show that any employee of the company was guilty of a criminal act from which the death of the plaintiff's son resulted. In this connection the bill of exceptions merely discloses that "the testimony for the plaintiff tended to support the declaration as to

the allegations of negligence." We have carefully read these allegations, and they neither declare nor even intimate that any employee of the defendant was guilty of a criminal or indictable act. It must, therefore, be assumed that no such acts were proved, and it follows that the plaintiff in error has not made it appear that the court below erred in holding that the contract into which he entered was, as applied to the facts proved, void because contrary to the public policy of this State. If the plaintiff in error had brought up all the evidence, and an examination of it showed that, as matter of law, the defendant's employees were guilty of criminal negligence, the question before us would be altogether different.

As the contract relied on, had it been between the deceased and the company, would certainly, but for the act of 1895, which will presently be more fully noticed, have been binding, to the extent herein laid down, upon him, it must, to that extent, be binding upon the father, unless the act just referred to contains something requiring a holding to the contrary. It is "An act to declare all contracts between master and servant, made in consideration of employment, whereby the master is exempted from liability to the servant arising from the negligence of the master or his servants, as such liability is now fixed by law, void as against public policy." Acts of 1895, p. 97. The provisions of this act now appear in the Civil Code, § 2613, which reads as follows: "All contracts between master and servant, made in consideration of employment, whereby the master is exempted from liability to the servant arising from the negligence of the master or his servants, as such liability is now fixed by law, shall be null and void, as against public policy." Whatever change the passage of this act made in existing laws, it is certain that by its express terms it applies exclusively to "contracts between master and servant." It can not, therefore, by construction, be applied to any other contracts. To attempt to do so would be an effort to legislate, which we have neither the inclination nor the authority to do.

It is proper to remark, before concluding, that this court can not assume that the court below, without undertaking to pass upon the evidence bearing on the question of negligence, directed the verdict complained of on the theory that the effect of the contract was to manumit the plaintiff's son and therefore deprive the father of all right to the son's services during his minority, and conse-

quently of all right to compensation for the loss thereof. There is nothing in the bill of exceptions from which it could even be inferred that the court based its action in directing the verdict upon any such view of the contract. Indeed, it does not appear that the court undertook to pass at all upon the question whether or not the contract did operate to manumit the minor; and as such was not its effect, it is certainly not to be presumed that the court erroneously held to the contrary, and in this way arrived at the conclusion that the plaintiff was not entitled to recover.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*