GOLDEN *v.* NATIONAL LIFE AND ACCIDENT
INSURANCE COMPANY.

80

No. 12912.   October 11, 1939.

*Homer A. Glore* and *Judson Andrews,* for plaintiff.
*Hendrix & Buchanan,* for defendant.

BELL, Justice. Upon consideration of the foregoing questions, it is apparent that they all relate to the same policy, and that each should be answered in the light of the facts gathered from all the questions combined. The answers given must be understood accordingly. Some of the questions, however, can not in any view be answered either *yes* or *no* without qualification.

In *Home Friendly Society* v. *Berry,* 94 *Ga.* 606 (supra), it was held: "1. Where one residing in Atlanta, Georgia, who was already a member of a beneficial society having its headquarters and principal office in Baltimore, Maryland, and who was the holder of a certificate of membership which embodied and embraced a policy of insurance by the society upon his life, made at different times two written applications for membership in the same society, and in each of them made several material representations, amongst them that he was not a member of that society, and thus obtained on each application a separate certificate of membership and policy of insurance upon his life, which declared upon its face that if the representations upon which the certificate was granted were not true the certificate should be void, both these certificates should, after the death of the member, be treated as void and of no effect, unless the company had notice, at some time before receiving the last dues upon some one of the three certificates, that the same identical person was a member when he applied for and procured one or both of the additional certificates and the cumulative insurance which they provided for. 2. Notice to the society's local agents at Atlanta who received the applications and collected the dues on all three of the certificates of membership, but who, so far as appears, had no power to represent the company in making contracts or waiving conditions expressed therein, the applications having separately and at different times been forwarded to Baltimore for acceptance and the certificates of membership having there, separately and at different times, been issued by the society's general officers, would not be notice to the society of the falsehood of the representation as to non-membership contained in the applications, unless it appeared that no such representation was actually

made to the agent who received and filled out the applications, but that he inserted the false statement without authority from the applicant and without his knowledge."

Following that decision, the Court of Appeals, in *National Life & Accident Insurance Co.* v. *Weaver,* 38 *Ga. App.* 590 (supra), held as follows: "Where a life-insurance policy provides that 'unless otherwise stated in the "space for endorsements" in a waiver signed by the president or secretary, this policy is void if . . any policy on the life of the insured has been issued by this company and is in force at the date hereof, unless this policy contains an endorsement signed by the president or secretary that such prior policy may be in force,' there can be no waiver of this provision of the policy by reason of the conduct of the company after notice of the existence of a policy in the company on the life of the insured at the date of the issuance of the policy, unless the notice is given to the president or secretary of the company, or to some agent of the company authorized to waive the condition. . . Where the policy provides also that 'the company shall not be presumed or held to know of . . any previous policy unless such fact . . shall be expressly shown in the application, and the issue of this policy shall not be deemed a waiver of this condition,' the mere fact that at the date of the issuance of the policy there was in existence in the same company a policy on the life of the same insured was, in the absence of knowledge of this fact by the president or the secretary, or some officer of the company with authority to alter contracts, insufficient as notice which would serve as the basis for a waiver by the company of the provisions of the policy. Were this otherwise, the provision in the policy which voids it by reason of the existence of another policy in the same company upon the life of the same insured would be meaningless and a mere nullity. . . This being a suit by the beneficiary against the insurer to recover under the policy for the death of the insured, and there being, on the policy sued on, no endorsement of a waiver of the existence, at the date of the issuance of the policy, of a pre-existing policy in the same company upon the life of the insured, and it not appearing that the president or the secretary of the company, or some officer of the company with authority to alter contracts had ever had knowledge of the existence of the other policy, and the fact of its existence not appearing in the application, the verdict found for the

plaintiff was, under the above rulings, unauthorized." A similar conclusion was reached in *Harris* v. *Bankers Health & Life Insurance Co.,* 40 *Ga. App.* 678 (supra). In that case the facts were as follows: The suit was by the beneficiary against the insurer to recover on a life-insurance policy. The policy contained the following provisions: "This policy shall be void if there shall be in force on the life of the insured a policy previously issued by the company, unless the first issued policy contains an endorsement signed by an officer of the company authorizing this policy to be in force at the same time. . . No person except the president or secretary has the power to modify or in the event of lapse to reinstate this policy or to extend the time of payment of the premiums. . . No agent has the power on behalf of the company to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information." Upon the trial the plaintiff's evidence showed without dispute that at the date of the issuance of the policy there was of force a pre-existing policy in the same company upon the life of the insured, upon which there was no endorsement authorizing the issuance of the policy sued on. There was nothing to indicate that either the president or the secretary, or any other officer of the company having authority to make or alter contracts, had ever waived the condition as to other insurance, or had any knowledge of the existence of the first policy as applying to the insured, nor did the fact of such previous insurance appear in the application. It was held that under the evidence the plaintiff was not entitled to recover.

Under the foregoing authorities, question No. 1 of those certified in this case is answered: Yes, unless some officer or agent having authority to issue policies or to enter the "waiver" had actual knowledge of the existence of the first policy at or before acceptance of one or more premiums on the second policy. See, in this connection, *Lippman* v. *Ætna Insurance Co.,* 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62), explaining *Carrugi* v. *Atlantic Fire Insurance Co.,* 40 *Ga.* 135 (supra); *Aronoff* v. *United States Fire Insurance Co.,* 178 *Ga.* 97 (172 S. E. 59). Subject to the same qualification, question No. 2 is answered in the negative, and question No. 3 in the affirmative. Compare *Life Insurance Co. of Va.* v. *Fitzgerald,* 143 *Ga.* 725 (85 S. E. 913).

■ We come next to questions 4 and 5. A person like a building

may be overinsured. Also, an insurer may not itself wish to carry more than so much on a particular applicant, regardless of other insurance; and it has the right to contract as it pleases, in regard to the amount. Hence the question of other insurance either in the same or in a different company may become material for consideration in passing upon any application. *Beasley* v. *Phœnix Insurance Co.,* 140 *Ga.* 126 (78 S. E. 722); Phœnix Mutual Life Insurance Co. *v.* Raddin, 120 U. S. 183 (7 Sup. Ct. 500, 30 L. ed. 644). An insurance company may issue thousands of policies in a single year. Incidentally, and for illustration only, it is noticed that the policy sued on in this case was numbered L-16,690,735; and the previous policy written some three years earlier, bore the number L-14,141,483. Unless informed by the applicant, the officers or agents of an insurance company in issuing a particular policy may not actually know, or be able readily to ascertain, whether another policy has been issued by it to the same person. Knowledge even that a policy has been issued to a person of the same name and address is not determinative. There is still the question of identity, which may be an extraneous matter. Let us say, for instance, that an application for insurance is made by John Smith, of Thomasville, Georgia. Has the company ever before received an application from a person of this name? Yes,—hundreds, maybe. Well, examine all the applications which have been submitted by all the John Smiths of any State or place where the company does business, and find if there is one from Thomasville, Georgia. Finally, through search of files, a former application from a person of that name and address is brought to light. But is it the same John Smith? A comparison of the applications would so indicate, but there is some difference, and still further investigation must be made. Or, perhaps, no other application by any one of the same description can be found, and the company issues the policy, only to discover later that the John Smith so insured has died and that the company is presented with claims upon two policies, one written in 1935, while John Smith was a resident of Jacksonville, and another in 1938, after he removed to Thomasville. For some time premium payments may have been made to the same local agent in Thomasville; or, clerical employees in receiving notification of change in address, and in handling premium notices and collections, may have discovered the insured's identity. Yet the

knowledge of an employee having such authority and duty, without more, would not be imputable to the company as knowledge of one having authority to execute and attach the waiver as to previous insurance.

Constructive knowledge, that is, knowledge which might have been acquired by diligence but was not acquired, would not suffice as notice. *Liverpool & London & Globe Insurance Co.* v. *Hughes,* 145 *Ga.* 716 (89 S. E. 817); *Lee* v. *Metropolitan Life Insurance Co.,* 158 *Ga.* 517 (4) (123 S. E. 737). In the absence of statute to the contrary, a party may even contract against liability for his own negligence. *New* v. *Southern Railway Co.,* 116 *Ga.* 147 (42 S. E. 391, 59 L. R. A. 115); *Hearn* v. *Central of Georgia Railway Co.,* 22 *Ga. App.* 1 (95 S. E. 368); *Dowman-Dozier Manufacturing Co.* v. *Central of Georgia Railway Co.,* 29 *Ga. App.* 187 (2) (114 S. E. 815); *King* v. *Smith,* 47 *Ga. App.* 360 (3) (170 S. E. 546). The stipulation here under consideration, however, does not go so far as to contract against negligence. Its only effect is to provide against a presumption of knowledge, and to place the burden of proof on the beneficiary, as a matter of contract. We have seen that in passing upon an application, the officers of the insurer may not be able to know actually, without some investigation and labor, perhaps much, whether in point of fact a policy has been previously issued by the company to the same person. For the insured, it would seem to be a simpler matter, since it is unlikely that he will have so great a number of policies that he can not readily or by slight investigation answer correctly as to previous insurance in the same company; and so the burden of informing the company may be reasonably placed upon him, by express agreement to that effect. The supposed case of John Smith is not an impossible one, and we think it fairly demonstrates the invalidity of the policy here under consideration. It appears from the questions propounded that the insured was interrogated as to previous insurance in the same company, and gave the answer "No." No reason appears why the company could not take him at his word, so long as no one having authority to enter the waiver as described had actual knowledge to the contrary. The contract does not place an impossible burden upon the insured, in violation of the Code, § 20-111, as queried. "An impossible consideration is insufficient to sustain any promise; if the consideration be possible but improbable, however, it is valid." Code, § 20-309.

In *Equitable Loan & Security Co.* v. *Waring,* 117 *Ga.* 599 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177), it was held: "1. The power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. 2. The authority of the lawmaking power to interfere with the private right of contract has its limits, and the courts should be extremely cautious in exercising the power to supervise private contracts which the lawmaking power has not declared unlawful." Contracts of insurance are governed by the same rules of interpretation as apply to other contracts, and they should be construed as others for the purpose of ascertaining the intention of the parties. As was said in *Reese* v. *Fidelity Mutual Life Association,* 111 *Ga.* 482, 485 (36 S. E. 637): "The contract . . established the respective rights and obligations of the parties, and this court has no power to alter its provisions and to declare a liability under a state of facts which the parties never agreed should fix it." The Code expressly declares, "The contract of insurance should be construed so as to carry out the true intention of the parties." Code, § 56-815. In Harris *v.* Industrial Life Insurance Co., 19 La. App. 589 (141 So. 103), it was said: "It is shown to be the custom to issue policies of this kind at the request of any beneficiary sufficiently well related to the insured. If such person may secure and retain a policy without the permission or knowledge of the insured, and may thus render null and void a policy which the insured himself may later secure on his own life in favor of another beneficiary, then a manifest injustice has been done to the insured, and to the beneficiary selected by him." The questions certified in the present case do not *show any such custom,* and consequently no such state of facts can be dealt with in this opinion. Various facts might conceivably exist to alter the conclusions arrived at in the present opinion, but in this connection it is proper to deal only with such facts as are brought to view by the questions propounded. From what has been said, the first inquiry contained in question 4 is answered in the affirmative, the second part of the same question is answered in the negative, and the first part of question 5 is answered in the negative, so far as they refer to the stipulations in question. In this view, no answer to the second inquiry contained in question 5 appears to be desired.

■ Question 6 is answered as follows: In such case the insurer may avoid liability on the second policy, notwithstanding it has continued to collect premiums until the death of the insured, unless the beneficiary produces evidence that some officer or agent having authority to issue policies or to enter the "waiver" had actual knowledge of the existence of the first policy. The questions do not indicate whether under the terms of the policy only an executive officer would be authorized to endorse thereon the waiver as to prior insurance. In any event, the question should be one of actual authority as distinguished from mere formal designation. The defense may be asserted without return of premiums. *Beasley* v. *Phœnix Insurance Co.*, 140 *Ga.* 126 (78 S. E. 722); *Columbian National Life Insurance Co.* v. *Mulkey*, 146 *Ga.* 267 (2) (91 S. E. 106). As to recovery of premiums paid, see *Curry* v. *Washington National Insurance Co.*, 56 *Ga. App.* 809 (194 S. E. 825). The statement made above that the contract does not impose an impossible burden upon the insured will comprehend the matter of producing evidence that some authorized officer or agent had actual knowledge of the previous policy. It should be remembered that such knowledge may be shown by circumstantial as well as direct evidence. As was said by Judge Russell in *Wiley* v. *Rome Insurance Co.*, 12 *Ga. App.* 186, 190 (76 S. E. 1067): "While it may be difficult to prove the existence of actual knowledge on the part of one who denies it (because in such case direct evidence is not attainable, unless he admits it), nevertheless even actual knowledge can be demonstrated by the proof of circumstances which will admit of no other reasonable conclusion than that the party who asserts his ignorance of a given fact actually knew it, and that his denial is untrue."

Furthermore, in speaking of officers or agents having authority to make contracts or to enter a "waiver" as described, we do not mean to imply that only such persons as are expressly so entitled or authorized may be shown to have had knowledge of the former policy. Some other officer or agent, or even a mere clerk, may, with permission of the company, actually and finally pass upon such matters, acting, however, not in his own name, but in the name of the company by its executive officers, and using for that purpose printed or stamped forms, including signatures; or even when actual signatures appear, they may have been attached merely as a matter of form, on the judgment and suggestion of a subordinate,

who by implicit arrangement, really determines the matter. If these should be the facts, knowledge of the person who would thus be actually authorized to handle the transaction should be imputed to the company to the same extent as if acquired through the officers or agents whose names or signatures are declared by the contract to be requisite on a waiver. It would seem that in view of the many policies and waivers to be considered, the executive officers might be unable to pass upon such matters except through clerks or others, under some arrangement of this kind. If so, then the true medium of information should be any person having authority to act upon it, in behalf of the company or its officers. In such a case the law, as in other cases, should deal with the matter according to its facts and realities, and not by forms, names, or titles. Such a disposition would be in accord with "the true intention of the parties." See *Springfield Fire & Marine Insurance Co.* v. *Price,* 132 *Ga.* 687 (2) (64 S. E. 1074) ; *Globe & Rutgers Fire Insurance Co.* v. *Walker,* 150 *Ga.* 163 (103 S. E. 907). Also, the plaintiff in such case is as free, as in others, to sue out interrogatories or to take depositions for the purpose of establishing the cause of action or rebutting a defense. Accordingly, it can not be said that the provisions of the contract as related to burden of proof are so unreasonable and arbitrary that they ought to be disregarded.

■ Much of the foregoing discussion might seem to be superfluous in view of the decision in the *Berry* case, supra, which appears to be directly in point; and having been concurred in by all the Justices as the court was then constituted, it is binding as authority. Code, § 6-1611. The decision was brief, however, and we have thought it not amiss to notice some of the reasons which would seem to underlie it, especially as some courts have taken a different view. In addition to the authorities listed by the Court of Appeals, all of which have been considered, see, either as contrary or as tending to the contrary: Phœnix Mutual Life Ins. Co. v. Central State Fire Ins. Co., 137 Kan. 69 (19 Pac. (2d) 696) ; Clay v. Liberty Industrial Life Ins. Co. (La. App.), 157 So. 838; Cobbs v. Unity Ind. L. Ins. Co. (La. App.), 158 So. 263; Wills v. Liberty Industrial Ins. Co. (La. App.), 159 So. 141; Kizer v. L. & C. Ins. Co., 169 Tenn. 605 (90 S. W. (2d) 513). Monahan v. Mutual Life Insurance Co., supra, is perhaps the leading case

among those holding to the contrary. In that decision the court speaks of facts peculiarly within the knowledge of the insurer, and not within the knowledge of the *beneficiary,* who herself had applied for the policy and represented that no other policy had been issued by the company upon the life of the *insured.* Although it appeared that such applicant did not know and had never known that a previous policy on the life of the insured was in existence, we are still unable to see that the existence of the previous policy was a matter so *peculiarly* within the knowledge of the company, when the applicant was a daughter of the insured and might have been presumed to know what she was talking about. The court further stated that the company "must be treated as knowing what it ought to have known." This was nothing less than applying constructive knowledge, which, according to the Georgia decisions, could not be charged to the company in such case. In the later case of Helm *v.* Sun Life Insurance Co., supra, the same court distinguished its decision in the Monahan case, upon the ground that the provisions of the policy there under consideration called for a forfeiture, while in the Helm case they merely limited the liability to a return of premiums; and under the facts of the latter case, the court held in favor of the *insurer* as to the validity of such limitation. In the course of the opinion in the Helm case, it was said: "If the condition mentioned, instead of limiting the liability of the company to the amount of premiums paid, had provided that in case there was such other insurance the company should only be liable for one half of the face of the policy, it could not be said that it was too unreasonable to receive the sanction of the courts; and if the liability of the company can, by the terms of its policy, be altered at all under such circumstances, there is no reason why, in the absence of fraud or misrepresentation, it can not be limited to the amount of the premiums paid." Now, how could it be said that a forfeiture would not result, if a policy is rendered void in half, but would result if rendered void in two halves? It seems to us that as related to forfeiture the result would be the same in both instances, except a difference in degree only. While forfeitures are not favored, they are not altogether prohibited in this State. Code, §§ 37-216; 85-901 to 85-906; *Equitable Loan & Security Co.* v. *Waring,* supra; *Thompson* v. *Hart,* 133 *Ga.* 540 (66 S. E. 270); *Self* v. *Billings,* 139 *Ga.* 400, 403 (77 S. E. 562).

Moreover, is it really a forfeiture to say that a policy of insurance shall be void—never come into being, if a certain fact exists? In such case, if the fact does exist, the insured has not acquired a right to be forfeited. Even if we did not have the *Berry* case, we still would not be satisfied with the reasoning either in the Monahan case, or in the Helm case so far as the latter refers to the former case.

In the Kiser case, supra, which is the latest case we have found on the subject, the Supreme Court of Tennessee refers to a number of the earlier decisions, and winds up by sustaining a clause limiting recovery to return of premiums. The court, however, approved the reasoning in the Helm case, leaving the inference that it would have held the clause invalid if it had provided that the policy would be *void* in case of other insurance. It might be remarked in this connection that the statements in both cases upon that question were mere dicta, since no such clause was involved in either case. In some decisions, a stipulation similar to that quoted in question 3 in the instant case, is treated as allowing the insurer a reasonable time as a sort of grace period, in which to ascertain the truth as to existence of other insurance. Atlas *v.* Metropolitan Life Insurance Co., 181 N. Y. Supp. 363; Clay *v.* Liberty Industrial Insurance Co., supra. We can not so construe the stipulation here under consideration, since to do so, we think, would require reading into the contract something not reasonably to be inferred from its terms. We have discovered no case stronger for the insured than those above discussed.

The decision by the Court of Appeals in *Interstate Life & Accident Co.* v. *Wilson,* 52 *Ga. App.* 171 (supra), seems to us not to accord with the rulings in the Georgia cases of *Berry, Weaver,* and *Harris,* supra. We agree to the statement by Broyles, C. J., that there was no material difference between the facts of that case and those involved in the *Weaver* and *Harris* cases.

*Questions answered accordingly. All the Justices concur.*