**AMERICAN AVIATION & GENERAL INSURANCE COMPANY,**
Appellant,

v.

**GEORGIA TELCO CREDIT UNION,**
Appellee.

No. 15374.

United States Court of Appeals
Fifth Circuit.

June 8, 1955.

Robert L. Marchman, III, Atlanta, Ga., Crenshaw, Hansell, Ware & Brandon, Atlanta, Ga., for appellant.

A DeJongh Franklin, Atlanta, Ga., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

This appeal involves the construction of an insurance policy. Appellant issued to the appellee its policy captioned, "Credit Union Chattel Lien Non-Filing Insurance," known in the trade more simply as "non-recording" insurance, de-

signed, subject to certain exclusions or exceptions, to compensate the appellee lender for its losses resulting solely from its failure to file for public record the instrument securing its debt, usually a bill of sale to secure debt, conditional sale contract, or chattel mortgage.

Appellee filed two claims under its policy based on two separate loans to a borrower named William W. Carney. The two loans aggregated $4,981.50; appellee's loss from failure to record the instruments securing the debts amounted to $4,192.50, but it filed claims for only $3,500.00 of such loss, the figure set forth in Exclusion E of the insurance policy, hereinafter quoted.

Exclusions A to F, inclusive, appear in the policy under the caption:

"Exclusions

"Warranted Free of All Claim".

Exclusion E reads: "For any loss covered by the terms of this Policy resulting from any loan or loans exceeding $3,500.-00 in all to any one borrower."

Appellant insists that the phrase "exceeding $3,500.00 in all to any one borrower" clearly modifies the words "any loan or loans," and that the loans to Carney having exceeded $3,500.00 it is not liable for any of the loss resulting therefrom. Appellee insists that the limiting phrase can reasonably be construed to modify the word "loss", and that the appellant is liable to the extent of $3,500.-00.[1] For reasons well expressed,[2] the district court agreed with the appellee.

■■ Appellant calls attention that the rule applied by the district court, that an insurance policy is to be construed most strongly against the insurance company, is reached only in the event the construction is doubtful or ambiguous, and the contract is reasonably susceptible to the meaning arrived at by the construction against the company; and we agree.[3] First we must seek to ascer-

1. Appellant questions whether the appellee actually so understood the policy, because in its sworn statement of loss appellee included the expression "it was discovered that inadvertently a loan had been made him on December 3, 1953." Appellee then recognized that it could recover only a portion of its loss. "This claim is filed in the amount of $1465.00 in view of exclusion E of the policy which apparently limits our recovery to $3500.00." The "inadvertence" could have been occasioned either by an understanding that the entire loan was excluded from the coverage of the policy, or that its excess over $3500.00 was so excluded. We do not construe the quoted words to be an admission of appellant's understanding that the entire loan was excluded, for such admission would be wholly inconsistent with the rest of the statement, and indeed with the making of the claim.

2. "The Court is of the opinion that the provision in question is capable of two constructions, that it is ambiguous, and that since it was worded and framed by the insurance company the ambiguity should be resolved against the plaintiff company.

"It would have been quite easy for the insurer, in framing this provision, to recite in effect that insurer would not be liable to any extent where the loss re-

sulted from any loan or loans to any one borrower exceeded $3,500.00. The policy did not so recite, but left in doubt the question whether the company was exempted 'for any loss exceeding $3,500.00', (meaning the excess over $3,500.00) or, on the other hand, the company's liability did not exist at all in such instances.

"Should this Court give the policy a different interpretation the following could result: The company could be liable on a loan to one borrower in the sum of $3,-500.00, but if the insured should then make an additional loan of even $1.00 the liability under the $3,500.00 would be immediately avoided rather than have an avoidance of the additional loan of only $1.00.

"It is no doubt true, as contended by plaintiff's counsel, that the purpose of this provision was to prevent individual borrowers from actually going into business, financing purchases of automobiles through the defendant. However, should that occur the individual liability of the plaintiff would still be limited to $3,500.00 for each borrower and, as stated above, if plaintiff desires a further exclusion, its policies can be worded so as to clearly indicate such intention."

3. Georgia Code Annotated Sec. 20–704, subd. 6; Willingham v. Life & Casualty

tain the intention of the parties, for in Georgia, as elsewhere, that is the cardinal rule of construction.[4] That intention is to be ascertained from the entire contract, construed as a whole.[5] The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded.[6]

The difficulty lies not in the statement of these and other long settled rules of construction, but in their application to the peculiar facts and circumstances of the particular case. While Exclusion E, already quoted, is the most directly pertinent part of the insurance policy, that policy must be considered in its entirety and construed as a whole to arrive at the intention of the parties. At its beginning the policy shows "Amount As Per Form" "Rate As Per Form" "Deposit Premium 50.00." In the first paragraph of the policy, the appellant undertakes to insure appellee for a term of one year "to an amount not exceeding ------ As Per Form ------ dollars." The form referred to is the mimeographed "Form No. 573" captioned "Credit Union Chattel Lien Non-Filing Insurance", which in turn is divided into a number of sections or divisions. First, the consideration and indemnification clauses are set forth. Secondly, under "Definition" the word "Instrument" as used in the first section is defined.[7] Thirdly, under "Exclusions" "Warranted Free of All Claim", six different situations designated A, B, C, D, E, and F are set forth. Paragraph A is "For losses not sustained during the term of this Policy * * *." B is "For any loss unless * * * " the property or the person possessed of or who has title to the property has been located. C is "For any loss resulting directly or indirectly from any dishonest or criminal act of any officer, clerk or servant of the Assured." D is "For any loss resulting from forgery". E has already been quoted. F is "For any loss resulting from any loan due and payable more that thirty-six (36) calendar months after the making thereof." Fourthly, under the division entitled: "This Policy Is Subject To The Following Agreements, Limitations And Conditions:", fourteen numbered paragraphs are set forth, the pertinent provisions of which are as follows:

"1. Loss payable under this Policy shall not exceed the retail market value of the Property represented by the Instrument at the time the Assured makes claim under this Policy; * * *."

"2. In computing the amount of loss under this Policy there shall be included all attorney's fees, court costs, marshal's or sheriff's fees, and any other costs or expenses which, prior to acquiring reasonable grounds of belief of the existence of a claim by a third person to a superior title to the property, the Assured may incur in an effort to recover the property, retain the proceeds of

Insurance Co. of Tennessee, 5 Cir., 216 F.2d 226, 228; Johnson v. Mutual Life Ins. Co., 154 Ga. 653, 115 S.E.2d 14; 44 C.J.S., Insurance, § 297, pages 1169–1174; 29 Am.Jur., Insurance, Secs. 166, 167; 1 Couch, Cyclopedia of Insurance, Secs. 188, 188(a); 13 Appleman, Insurance Law & Practice, Sec. 7401; 1 A.L.I. Restatement of Contracts, Sec. 236(d).

4. Georgia Code Annotated 1933, §§ 20–702, 56–815; Golden v. National Life & Accident Ins. Co., 189 Ga. 79, 87, 5 S.E.2d 198, 204, 125 A.L.R. 838.

5. Georgia Code Annotated Sec. 20–704, subd. 4; Marbut v. Empire Life Ins. Co., 143 Ga. 654, 85 S.E. 834; Fisher v. American Casualty Co., 194 Ga. 157, 159, 21 S.E.2d 68, 69.

6. Georgia Code Annotated Sec. 20–704, subd. 6.

7. "For the purpose of this Insurance, an 'Instrument' is defined to be Certificate of Title, or a Chattel Mortgage, Conditional Bill of Sale, Chattel Trust Deed, Trust Receipt, Deed of Trust, Conditional Sales Contract or Bill of Sale to secure Debt, or any writing, evidencing or creating or reserving a lien or interest in household goods, appliances, equipment, machinery, automobiles, motor trucks or similar manufactured products which customarily are not so affixed to realty as to become a part thereof, and on livestock in conjunction with the foregoing or alone."

the sale thereof, and/or enforce its rights under the Instrument, and which would be recoverable from the borrower if the Instrument had been duly recorded or filed with the proper public officer or public office, or had an encumbrance been shown by the proper public officer or public office on the Certificate of Title. * * * "

"8. The Underwriters upon the payment of any loss hereunder shall become subrogated to all the rights and remedies of the Assured in respect of such loss; provided, however, that in the event the payment by the Underwriters is insufficient to liquidate the entire loan, then the subrogation rights of the Underwriters, as provided in this paragraph, shall be subordinate to the Assured's claim for such unpaid portion of the loan."

"12. The premium paid hereon is a provisional premium and is subject to adjustment at the end of the first year of the Policy term. The earned premium shall be based upon the number of loans secured by Instruments made during the first year of the Policy term. The earned premium shall be calculated at $0.40 per loan so secured by such Instruments. If the earned premium thus computed exceeds the provisional premium the Assured shall pay the excess to the Underwriters; if less, the Underwriters shall return to the Assured the unearned portion paid by them."

While the early part of the policy repeatedly states that the amount of the policy is "as per form", there are only two provisions in the form which limit the amount of coverage under the policy: Provision 1 of the "Agreements, Limitations and Conditions" limiting the loss payable to the retail market value of the property; and Exclusion E, the most pertinent provision of the policy, which, for convenience, is again quoted: "For any loss covered by the terms of this Policy resulting from any loan or loans exceeding $3,500.00 in all to any one borrower." Exclusion E is the only provision of the policy limiting in stated amount the maximum liability of the appellant, and obviously such limitation was at least one purpose of the exclusion. Appellant can still insist however, that a further purpose was also made clear to exclude the entire loan or loans exceeding $3,500.00.

If Exclusion E does serve such double purpose, it can hardly be construed to limit the amount which might be added from items such as attorney's fees incurred by the insured, costs and expenses allowed by paragraph 2 of the "Agreements, Limitations and Conditions". The construction contended for by appellant would thus remove any definite limit from the extent of its liability for any particular loss. That does no harm to the appellant under the facts of the present case. We can only conjecture that its position would have been the same if it had been called on to pay a claim in excess of $3,500.00, because of the addition of attorney's fees, costs and expenses. Paragraph 12 of the "Agreements, Limitations and Conditions" shows that the annual premium shall be forty cents per loan. The premium being for each loan separately, the maximum liability would be expected to be stated for each loan, and it is of no moment that the policy does not contain an over-all limitation of the aggregate amount of claims. In effect, for purposes of coverage, Exclusion E requires all loans to one borrower to be treated as a single loan.

There is no provision in the policy for a refund of the premium, or any part thereof, if there should be a loan which is not covered by the policy. Yet, as the district court so well observed, under appellant's construction, the coverage of any number of loans to one borrower would be immediately annulled if an additional loan should make the total indebtedness of the borrower exceed $3,-500.00 by the slightest sum. The premiums paid for the annulled loans would be forfeited to appellant.

Paragraph 8 of the "Agreements, Limitations and Conditions" clearly shows

that the parties recognized that situations might arise in which only part of a total loss would be covered as an allowable claim. One such situation, it is true, might be when the loss exceeded the retail market value of the property limitation in paragraph 1. That, however, is not exclusive; and another such situation would be that portion of a loss in excess of $3500.00, giving to Exclusion E the construction claimed by appellee. It occurs to us that a third such situation would arise under Exclusion F in the case of a loan payable in installments, some of which became due less than, and some more than, thirty-six (36) months after the making of the loan.

■ Considering the policy as a whole, it seems to us that the more reasonable construction is that the loss resulting from loans to any one borrower was limited to $3500.00, not that loans exceeding such sum were excluded in their entirety from the coverage of the policy. If, however, we go too far in reaching that construction, we would still think that the policy is ambiguous and reasonably susceptible to that construction.

A prospective insured might naturally assume that the insurer was more interested in limiting the loss for which it became liable than in limiting the amounts of the loans for which the insured bore the primary risk. That natural assumption would be corroborated and reenforced by the beginning words of each of the exclusionary clauses, emphasizing "loss" as the subject alike of the coverage and of the exclusions.

Whether the policy clearly means what the appellee contends, or is so ambiguous that it should be construed in favor of the appellee insured, the result follows that the judgment should be and is

Affirmed.

TUTTLE, Circuit Judge (dissenting).

With all deference I must dissent from the opinion of the court, because I am convinced that it extends the already wide field of judicial rewriting of private contracts.

Faced with the grammatical rule that a qualifying phrase refers to its nearest antecedent, unless the intention of the parties appears otherwise, the court does not deny that the language of Exclusion E, standing alone, has a definite unambiguous meaning, namely that if a loan or loans totalling more than $3500 should be made to any one borrower, any loss resulting therefrom is excluded from the policy. On the contrary, the court seeks to avoid the effect of this rule by finding a meaning inconsistent with this, expressed in other parts of the policy; or to find some sort of ambiguity in the whole policy, though none is found in Exclusion E itself. To find what Exclusion E means, the court shuns like the plague considering what it says; a studied avoidance of the obvious, and a detailed analysis, instead, of the most uncertain and apocryphal indications of the parties' intention is the means whereby the court concludes that the exclusion means something other than what it says. At the point where the court says, "Considering the policy as a whole, it seems to us that the more reasonable construction is that the loss resulting from loans to any one borrower was limited to $3500.00, not that loans exceeding such sum were excluded in their entirety from the coverage of the policy", it seems to me that the court has not really considered the policy as a whole, but the most far-fetched portions of it, and then drawn erroneous inferences from them.

While recognizing the literary ability which enables the court, with conviction which I do not doubt, to draw substantial conclusions from matters which seem of no substance to me, I am constrained to object that in ascertaining the intention of the parties some considerable weight ought to be given to the language of Exclusion E, the precise clause that is before us for application, and that no matters even approaching its importance have been considered in the court's opinion. The court, so it seems to me, needs a reminder that what they are supposed to be seeking is the intention objectively

manifested in the entire policy; but the court appears to be so occupied in the search for minute clues, that it overlooks the real nub of the matter, namely the grammatical meaning of Exclusion E.

Now, the matters which the court regards as significant indications that the parties intended the construction adopted by the court, may fairly be summarized as follows:

(1) If the construction urged by appellant is correct, the policy does not contain a monetary limit to claims for attorney's fees and collection costs indemnified in any particular loss; however, one would *expect* to find such a limitation in the policy.

(2) If the construction urged by appellant is correct, the premiums paid for the excluded loans would be forfeited to the insurer.

(3) The policy provides for priority of the insured's claim for an *unindemnified portion* of a loss over the insurer's subrogation rights; the policy contains express provisions for partial indemnification where the retail market value of the loan security is less than the amount of the loss, and where some loan payments are due more than 36 months after the making of the loan;[1] from this it is a justified inference that the parties intended partial indemnification also for losses resulting from loans to one person aggregating more than $3500, in spite of the contrary language of Exclusion E.

Now, it is my belief that these matters do not express any intention contrary to the literal meaning of Exclusion E; and certainly the unambiguous language of that exclusion must be given effect unless a *contrary* intention is expressed elsewhere in the policy. And there is no ambiguity—so far as is material here— in the policy, once we give due consideration to Exclusion E in our deliberations. However, the court seems to assume gratuitously that Exclusion E is equally susceptible to two interpretations, and that the three minutiae stated above tip the scales in favor of showing that the intention of the parties was contrary to the intention expressed in Exclusion E. So reasoning, the court proceeds to say that the manifested intention of the parties was contrary to what they said there, justifying the court in ignoring the grammatical rule in interpreting Exclusion E. But in concluding that it might properly ignore the grammatical signification, the court first assumed, so it seems to me, that the clause was equally susceptible to two meanings, an assumption correct only if it is proper to ignore the grammatical rule. The court's reasoning therefore seems to me circular.

Let us examine one by one the matters held by the court to indicate an intention contrary to the literal meaning of Exclusion E:

(1) The court says one would *expect* to find in the policy a *monetary* limit to the attorney's fees and collection costs for which insured was indemnified in any one loss. Now, by what rule of construction recognized in Georgia, the place of this contract, can we import into the agreement as an aid to the finding of an ambiguity what the court might *expect* to find in such a contract?

But even if we had the right to test the intent of the parties by what we think they should have embodied in their contract, this is not a persuasive point, for there is clearly a limit of the amount of recovery.

When one examines Paragraph 2 of the "Agreements, Limitations and Conditions" with care, the argument loses all of its cogency. For by that Paragraph's terms, such fees and costs were indemnified only to the extent that they were incurred by insured before acquiring reasonable grounds of belief of the existence of a claim by a third person to a superior

---

1. Another conceivable situation not mentioned by the court where a right to partial indemnification might arise, bringing Paragraph 8 of the "Agreements, Limitations and Conditions" into operation, is the contingency that the insurer might become insolvent, so that it would be unable to pay a claim in its entirety.

title in the property; that is, insured is indemnified for such expenses only up to the time it had reason to believe the insurance policy covered the loss. Thus the self-interest of the insured in keeping its unindemnified expenses to a minimum could be relied upon to protect the insurer from the payment of disproportionate or unreasonable collection costs, the indemnity for such costs ceasing as soon as the insured had reasonable ground to believe the loss is covered by the insurance. Since the literal interpretation of Exclusion E, as the court concedes, would result in a most effective limitation of the insured's claims for defaulted loans, and the indemnified collection costs could be counted on to be proportionate and predictable in the actuarial sense, there seems to me no sound reason to infer that the parties intended a specific monetary limit to the collection costs indemnified.

(2) The occasional forfeiture of the premium which would follow from interpreting Exclusion E as it is written, is no more a proper ground to infer that Exclusion E means something other than what it says, than it is to infer that the parties intended to provide for a refund of the premium if paid by mistake.[2] But after all, forfeiture of premiums in the sense used here, is a common enough phenomenon in insurance contracts. If the insured fails to file a timely proof of loss as required in an unambiguous clause, is the resulting forfeiture a basis to infer that the parties meant something different? I trust that the court would answer no to my rhetorical question, but after reading its opinion I cannot be sure. Furthermore, a forfeiture may result just as certainly from the court's construction as from the literal interpretation. Suppose the insured makes three $3500.00 loans to X, paying the insurer the agreed premium on each loan. X repays nothing, sells the security, and absconds. The insured recovers nothing on the policy according to my view, $3500 according to the court's. But is the forfeiture any less real if the court's construction is adopted? In my opinion, this argument advanced by the court is purely *ad hominem*.

(3) The third argument is not even plausible as I understand it. This argument is of the form:

"Some losses are partially unindemnified. Situations A, B and C give rise to partially unindemnified losses. Therefore, situation D gives rise to a partially unindemnified loss."

This argument is about as valid as the following, which is based on the same type of inference:

"Some men are Greeks. Homer, Socrates, and Demosthenes are Greeks. Therefore, Charlemagne is a Greek."

I am firmly of the opinion that not only is Exclusion E in itself unambiguous, but also that there is no significant indication of any intention contrary to its plain grammatical meaning, to be found elsewhere in the policy. The grammatical rule that modifying phrases relate to the nearest antecedent unless a contrary intention is manifested, does not permit the finding of two meanings of Exclusion E, whereof the more favorable to the insured must be adopted. Resting firmly in the conviction that there is no ambiguity, I think it is appropriate nevertheless to point out some common-sense observations about the purpose of Exclusion E, neither to bolster my conclusions by unnecessary make-weights, nor to weaken them by suggesting there may be doubt as to the meaning, but simply to show the superficiality of what to me seem trivial matters which the court says manifest the true intention of the parties, which the court makes the basis of its decision.

---

2. Aside from the fact that the premium said by the court to be forfeited amounted to only $.40 each loan, it is to be noted that the policy provided for adjustment of the premium at the end of the year in accordance with actual loss experience. Thus the forfeiture does not appear to be of a very mischievous sort, for it would operate to benefit policyholders primarily, not the insurer.

This policy of insurance is clearly a device to shift a certain class of risks to the insurer; to be specific, the risk that a consumer may fraudulently resell consumer goods which he is purchasing, on ordinary installment terms, before he has fully paid for them. Now it is evident that this is a kind of risk which can be estimated by actuaries and become the subject of insurance. It is also evident that it is a risk differing substantially from the risk that a retail merchant might so resell goods, or the risk that a person buying on extremely long terms might do so, or the risk that a consumer who has bought far more than he will ever consume might do so. The common sense of the actuarial situation is so far as possible to eliminate those risks from coverage *in their entirety*, not simply in part. That is what Exclusion F does, in excluding "any loss resulting from any loan due and payable more than thirty-six (36) calendar months after the making thereof." Not only would it be unpermissible grammar to read this as "any loss (resulting from any loan due and payable) more, than thirty-six months after the making thereof," but it would be a flagrant disregard of the actuarial purpose of the exclusion; the length of the loan is the significant risk factor, and not the date of the loss. Here, the factor which is significant to those who must calculate the risk, is clearly the total amount of the loans to a single person. We all agree to this, I suppose. Now, if the risk of loss on those loans aggregating more than $3500 to one person is qualitatively different and relatively greater than the normal risks insured against, would it be sensible to exclude part of that risk, or all of it? Would a sensible life insurance company include heart patients in its ordinary rate classifications up to a maximum of $3500? Or would it exclude such persons entirely from its normal rate schedules?

In interpreting the policy as a whole to find the parties' intention, then, not only does the court ignore the language of Exclusion E, but it also glosses over the common sense purpose of the insurance. To disregard the grammatical meaning of that exclusion, however, there must be an inconsistent expression of intention elsewhere in the document itself. Certainly the court's opinion points out no inconsistent expression of intention; at face value the matters pointed out are no more than obscure hints, and on close scrutiny mean nothing. On this point, Williston says:

"The freedom of interpretation permissible is, however, necessarily limited by the principle that unexpressed intention is of no legal effect. The reason for interpolating, omitting, or disregarding specific words is that in the remainder of the writing an intention is expressed which makes it evident that particular words were erroneously used." 3 Williston, Contracts § 619 (Rev. Ed.); see also O. W. Holmes, "The Theory of Legal Interpretation," 12 Harv.L.Rev. 417.

The court's opinion conjectures that the insured "might naturally assume" that the language of Exclusion E meant something different from what the rules of grammar say it means. That kind of supposition of what *might* have been the insured's secret state of mind is not the sort of thing which renders an integrated contract ambiguous. The parol evidence rule forbids that. See 9 Wigmore, Evidence § 2458 et seq. (3d Ed.); Restatement, Contracts § 230, Comment b:

"They have assented to the writing as the expression of the things to which they agree, therefore the terms of the writing are conclusive and a contract may have a meaning different from that which either party supposed it to have."

See also Reese v. Fidelity Mutual Life Ass'n., 111 Ga. 482, 485, 36 S.E. 637; Maddox v. Life & Casualty Ins. Co., 79 Ga.App. 164, 173–174, 53 S.E.2d 235; Provident Life & Accident Ins. Co. v. Anderson, 4 Cir., 166 F.2d 492, 494, certiorari denied 334 U.S. 846, 68 S.Ct. 1514, 92 L.Ed. 1769; Gulf Refining Co. v. Home Indemnity Co., 8 Cir., 78 F.2d

842, 843–844. And see our recent case of Willingham v. Life & Casualty Ins. Co., 5 Cir., 216 F.2d 226.

I think the judgment below should be reversed.