**Hugh P. CARTER**

v.

**J. C. RARY.**

**No. 11047.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 24, 1969.

As Amended March 2, 1970.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for plaintiff.

Larry W. Thomason, Decatur, Ga., for defendant.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

The question in this case is whether an escrow holder became liable for the conversion of escrow funds which he transferred upon receipt of a mortgage commitment agreement, without first ascertaining that the mortgage commitment fulfilled the exact requirements, or "matched", the mortgage commitment agreement, executed in conjunction with the escrow agreement. The court holds that the escrow holder should have ascertained that the mortgage commitment matched the requirements of the mortgage commitment agreement before releasing the funds, and that, because he did not, he is liable for the conversion of the escrow funds.

At the pretrial conference, it became apparent that, while the facts were undisputed, plaintiff construed the escrow agreement and mortgage commitment agreement to require the escrow holder to match the mortgage commitment with the mortgage commitment agreement before transferring the funds, while defendant contended that the escrow and mortgage commitment agreements imposed on him no such requirement. The parties requested, and the court granted, permission to file appropriate motions. Presently before the court are the plaintiff's motion for partal summary judg-

ment, requesting the amount of the earnest money, $6,480, and the defendant's motion for total summary judgment, asking for a judgment for him as to all of the relief requested by plaintiff, to wit, the earnest money, and both consequential and punitive damages.

The facts are undisputed. As they are pertinent, plaintiff Hugh Carter desired to enter into a real estate venture. In order to obtain financing, he executed an escrow agreement with defendant J. C. Rary, and simultaneously executed a mortgage commitment application with First Fidelity Mortgage Company of Decatur, Georgia. The loan commitment sought to be secured by plaintiff was to be in the amount of $216,000 at the rate of 7½% per annum, with amortization over a period of twenty (20) years. Copies of all documents referred to in this order may be found attached to the deposition of defendant Rary.

Defendant Rary deposited plaintiff's earnest money in a separate escrow account at the Decatur Motor Bank of the Fulton National Bank, Atlanta, Georgia. First Federal applied to Continental Investment Bankers, Inc., 906 Grand Avenue, Kansas City, Missouri, which, on January 20, 1967, issued a commitment to plaintiff, #CIBI 00508. On January 24, 1967, Rary transmitted to plaintiff a telegram stating: "Your commitment is in my office awaiting your instructions concerning transmittal." On that same day, Rary wrote a check for $3,240.00 from the escrow account to Continental Investment Bankers, Inc. On the next day, January 25, 1967, Rary released an additional $2,700.00 from the escrow account to First Fidelity Mortgage Company. The remainder, $540.00, was retained by Rary as his fee.

On February 1, 1967, Rary forwarded a photocopy of the Continental Investment Bankers commitment #CIBI 00508 to plaintiff, in accordance with plaintiff's instructions. On February 6, 1967, Carter sent a letter to Rary in which he demanded that Rary return his earnest money. Also on that date, plaintiff sent a similar letter to First Fideli-

ty Mortgage Company, with a copy to Rary.

Rary does not contend that he attempted to match the Continental Investment Bankers, Inc. commitment with the terms described in the mortgage commitment application. In his deposition, he readily admitted that he did not match the terms. Therefore, the only question remaining for the court is one of construction of the escrow agreement and the mortgage commitment application. In other words, did the two agreements, construed together, require Rary to match terms before releasing the earnest money?

The Continental commitment differed from the mortgage commitment application in that its terms were for a period of fifteen (15) years under a twenty (20) year amortization schedule with the balance remaining at the end of fifteen (15) years payable in a lump sum. The application had requested a twenty (20) year amortization schedule. The interest rate, rather than 7½% as requested, was to be either 7½% per annum or 1½% above prime rate, whichever was higher. The loan was to be closed at 97½% of par, rather than 100% as requested. There is no dispute that these differences were substantial.

The escrow agreement, in pertinent part, reads as follows:

The undersigned, HUGH P. CARTER, does hereby agree that the monies in the amount of Six Thousand Four Hundred and Eighty ($6,480.00) Dollars deposited with J. C. Rary, Attorney at Law, as Escrow Agent, as earnest money on a contract of even date, copy of which is attached hereto and by this refrence [sic] made a part hereof, shall be held by the said J. C. Rary pending his reciept [sic] of a permanent mortgage commitment for HUGH P. CARTER, at which time the said escrow agent shall disperse [sic] the escrowed monies to the Committing Companies, FIRST FIDELITY MORTGAGE COMPANY, and their Attorneys as their interests ap-

pear. It is further agreed that after so dispersing [sic] the escrowed monies he shall then notify the said HUGH P. CARTER, by telegram, rigistered [sic] mail or telephone that the said photocopy is in his possession and that he disbursed the funds as agreed, and at that time the said HUGH P. CARTER, shall instruct him as to the manner of transmitting the photocopy.

To sharpen the focus on the bases for the respective contentions of the parties, attention is directed to the language beginning on the eighth line of the above quotation: " * * * [the earnest money] shall be held by the said J. C. Rary pending his receipt of a permanent mortgage commitment for Hugh P. Carter, at which time the said escrow agent shall disperse [sic] the escrowed monies to the committing companies. * * * " It is Rary's contention that the use of the non-specific article, "a", before the words "permanent mortgage commitment", authorized him to disburse the escrowed monies on receipt of *any* permanent mortgage commitment regardless of its terms. On the other hand, it is Carter's contention that the incorporation by reference of the more specific language in the commitment agreement controlled Rary's actions.

The mortgage commitment application, in pertinent part stated:

2. The undersigned applicant for a mortgage loan commitment on the above described property being duly authorized to do so hereby employs First Fidelity Mortgage Company (hereinafter referred to as Company) as exclusive representatives for a period of 10 days from date to procure the aforesaid mortgage loan commitment *under the terms and conditions herein set forth.*

* * * * * *

5. In the event Company shall obtain a commitment for said loan *according to terms herein,* and thereafter the applicant shall refuse or fail to pay all fees as

provided in this agreement for any reason, the applicant will pay all fees and disbursements occurred in his behalf as herein provided. * * *

6. Upon signing of this agreement the applicant does hereby deposit as earnest money the amount of $6,480.00, receipt of which is hereby acknowledged, to be held by an Escrow Agent approved by the Company pending the securing of a loan commitment *as applied for.* This deposit will be returned to the applicant in full, less any expenses incurred by Company pursuant to Paragraph 4 above, providing however, that in the event said commitment is not accepted or exercised by the applicant, earnest money shall be paid to Company and applied upon origination fee due. However, it is the intent of the parties that in the event no loan commitment is obtained within the time set forth in Paragraph 2 above, the Company will continue to exert its best efforts to obtain the loan commitment until it receives a written notice and request for refund and failure to give such notice shall be construed as a waiver of the lapse of the agreement which shall continue in full force and effect until such notice is received. Upon receipt of such notice Company shall have seven days in which to make the requested refund.

* * * * * *

12. It is agreed between parties that the separate escrow agreement executed by the parties and of even date is by this reference made a part of this contract. (Emphasis added.)

The italicized portions above, as incorporated by reference into the printed escrow agreement, provide the basis for the plaintiff's contention that defendant was required to match the terms of the commitment received with the terms of

this application. (The application also included the typewritten monetary terms requested, as described earlier in this order, and was signed by Carter.)

■ As a preliminary to a discussion of the law, it should be noted that defendant, in his motion for summary judgment, argues that plaintiff failed to comply with a condition precedent to the return of the escrow monies, to wit, that it failed to provide First Fidelity with a written notice and request for refund, in accordance with paragraph 6 above. The court is perplexed by this argument, because defendant has stipulated to the following statement, the substance of which is now incorporated in the pretrial order:

> Also on February 6, 1967, [in addition to the demand for Rary to return the earnest money], plaintiff sent a letter to First Fidelity Mortgage Company, with a copy to defendant Rary.
> * * *

The letter, in essence, complains that the commitment does not match the commitment application. It states, in pertinent part:

> If you are in position within the next seven days send me a commitment in accordance with the application and I will be glad to go ahead with the matter. Otherwise, I hereby notify you that I am electing to terminate the whole situation and am demanding the escrow funds which I have placed.

In view of this letter, and in view of the stipulation by defendant, the court holds that the plaintiff satisfied the condition precedent to the return of the earnest money by providing a written demand to First Fidelity Mortgage Company as required by paragraph 6 of the mortgage commitment application.

There is no real dispute between the parties that Georgia law required Rary to release the earnest money upon the occurrence of a contingency, the occasion of which was to be determined by the terms and conditions of the deposit. *See* Fulton Land Co. v. Armour Insulating Co., 192 Ga. 526, 527, 15 S.E.2d 848 (1941); Anderson v. Goodwin, 125 Ga. 663, 669–670, 54 S.E. 679 (1906); McGinley v. Chappas, 91 Ga.App. 418, 85 S.E.2d 791 (1955); Carter v. Turbeville, 90 Ga.App. 367, 370–371, 83 S.E.2d 72 (1954); 28 Am.Jur.2d, Escrow §§ 16, 18 (1966). *See also* Ga.Code Ann. § 29–105 (1958). Nor is any contention made by defendant that the mortgage commitment agreement, having been incorporated by reference as a portion of the escrow agreement, should not be construed as a portion of the escrow agreement to determine the contract between the parties. *See* Glens Falls Indemnity Co. v. Southeastern Construction Co. for Use of D-A Lubricant Co., 207 Ga. 488, 490, 62 S.E.2d 149 (1950); Warren v. Gray, 90 Ga.App. 398, 401, 83 S.E.2d 86 (1954); Pittsburgh Plate Glass Co. v. American Surety Co., 66 Ga.App. 805, 813, 19 S.E.2d 357 (1942); McArthor v. McGilvray, 1 Ga.App. 643, 57 S.E. 1058 (1907). The only real question remaining in the case is whether the contingency upon which the release of the earnest money depended was the receipt of any permanent commitment or was the receipt of a permanent commitment which matched the terms of the mortgage commitment application.

The primary rule of construction relied on by the court in determining the issue is this:

> * * * [N]o construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance * * * Golden v. National Life & Acc. Ins. Co., 189 Ga. 79, 87, 5 S.E.2d 198, 125 A.L.R. 838; Yancey v. Aetna Life Ins. Co., 108 Ga. 349, 351, 33 S.E. 979; Wheeler v. Fidelity & Casualty Co., 129 Ga. 237, 240, 58 S.E. 709; Cato v. Aetna Life Ins. Co., 164 Ga. 392, 398, 138 S.E. 787; Daniel v. Jefferson Standard Life Ins. Co., 52 Ga. App. 620(2), 184 S.E. 366.

Wolverine Ins. Co. v. Jack Jordon, Inc., 213 Ga. 299, 302, 99 S.E.2d 95 (1957).

Paragraph two of the mortgage commitment application provided that First Fidelity Mortgage Company was to be the exclusive representative of Carter to procure a mortgage loan commitment " * * * under the terms and conditions herein set forth. * * *" Paragraph 5 provided that, in the event that First Fidelity should obtain a commitment for the loan " * * * according to terms herein * * *", that under certain conditions Carter forfeited the earnest money. Paragraph 6 provided that Rary was to hold the earnest money " * * * pending the securing of a loan commitment as applied for * * *". Finally, to complement the incorporation by reference of the mortgage commitment application into the escrow agreement, paragraph 12 of the mortgage commitment application incorporated the escrow agreement as part of it. Construing these provisions, it is patently clear that First Fidelity was to be the agent of Carter to procure a mortgage commitment according to his specified terms. It is equally clear that Rary was required to abide by those terms. Therefore, the court holds that (1) the mortgage commitment application was incorporated by reference, and was thus a part of the contract between the parties, and (2) construing this contract, the court holds that Rary was required to ascertain that the mortgage commitment satisfied the requirements of the mortgage commitment application as a condition precedent to disbursing the earnest money. Because of his failure to do so, he is deemed to have converted the earnest money, and the court holds that he is liable to the plaintiff for it. *See* Fulton Land Co. v. Armour Insulating Co., *supra*; Carter v. Turbeville, *supra*.

The plaintiff in his brief makes additional arguments which fortify the court's decision. In short compass, in interpreting a contract, the court should attempt to determine as nearly as possible the situation of the parties at the time of its execution, giving consideration to the purpose and nature of the agreement, as well as to the surrounding circumstances. See, *e. g.*, Hohenstein v. S. M. H. Trading Corp., 382 F.2d 530, 531–532 (5th Cir. 1957); W. C. Shepherd Co. v. Royal Indemnity Co., 192 F. 2d 710, 715 (5th Cir. 1951); Illges v. Dexter, 77 Ga. 36, 39–40 (1885); Whitney v. Hagan, 65 Ga.App. 849, 850, 16 S.E.2d 779 (1941). As Carter stated in his deposition testimony, he could not have completed the venture under the less desirable terms of the mortgage commitment actually made. Speaking generally, the notion of releasing the earnest money upon the receipt of any mortgage commitment, regardless of its terms, would seem to viscerate the advantage of having an independent third party hold the money. Investors in a modern commercial world do not pay earnest money for a "pig in a poke".

In addition, a contract is to be construed " * * * most strongly against the party * * * undertaking the obligation * * *." Ga.Code Ann. § 20–704(5) (1965); Georgia Southern and Florida Ry. Co. v. United States Casualty Co., 177 F.Supp. 751, 758 (M. D.Ga.1959), aff'd, 272 F.2d 712 (5th Cir. 1960); Holloway v. Brown, 171 Ga. 481, 483, 155 S.E. 917 (1930). This escrow agreement was apparently of Rary's making, or that of his agents, because it is undisputed that Carter had no hand in the drawing of the instrument. Further, the operative language of the mortgage commitment agreement, *i. e.*, the paragraphs quoted above, appears in a form contract bearing the letterhead of First Fidelity Mortgage Company. Therefore, any doubt in the construction of the contract would have to be resolved in Carter's favor. However, the court need not rely on these arguments, as it bases its decision on the patently clear language of the contract.

Therefore, the court hereby grants summary judgment for Hugh Carter against J. C. Rary to the extent of the

earnest money, $6,480.00. Because of the desire of each of the parties that this issue be resolved before trial, this order is hereby incorporated as a portion of the pretrial order in this case.